ALLEN v. GILMAN, McNEIL & CO. (ÆTNA LIFE INS. CO., Garnishee).

(Circuit Court, E. D. Pennsylvania. April 26, 1905.)

No. 65.

1. GARNISHMENT—RIGHTS OF PLAINTIFF.
   Where a judgment creditor of the holder of an employer's liability policy garnished the insurer, such creditor was only entitled to enforce the rights of his debtor, if any, against the garnishee.

2. SAME—EMPLOYER'S LIABILITY POLICY—CONSTRUCTION.
   An employer's liability policy provided that if a suit was brought against insured he should immediately forward process to the insurer, which would defend against or settle the claim; that the purpose of the policy was to indemnify the insured "against loss from liability for damages;" and that no action should lie against the insurer to recover any loss under the policy unless brought by the insured himself to reimburse him for payment by him in satisfaction of a judgment. Held, that the policy was an agreement to indemnify insured "against loss," and not against "liability," so that no recovery could be had against the insurer by insured's attaching creditor until after complete payment by insured of the claim for which the insurer was liable under the policy.
   [Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Garnishment, § 59; vol. 28, Cent. Dig. Insurance, § 1298.]

See 127 Fed. 609.

Francis Fisher Kane, for plaintiff.
R. W. Archbald, Jr., and Simpson & Brown, for garnishee.

J. B. McPHERSON, District Judge. The facts upon which this controversy arises have been agreed upon by the parties in the following case stated:

"On the 13th day of December, 1902, the Ætna Life Insurance Co. entered into a certain contract or policy of insurance with the defendant, Gilman, McNeil & Co. (a true copy of which, marked 'Exhibit A,' is hereto attached). The said Gilman, McNeil & Co. is a corporation duly organized under the laws of the state of West Virginia.

"On May 5, 1903, the circuit court of Kanawha county, in the state of West Virginia, having jurisdiction in the premises, in a suit in equity brought by George C. McNeil against the said Gilman, McNeil & Co. and others, appointed Walter F. Trotter receiver of all the property of the said Gilman, McNeil Company, Incorporated, and security was on the same day duly entered by the said receiver, as ordered by the court, he entering upon his duties as such. A true copy of the decree of the court, marked 'Exhibit B,' is attached hereto and made part hereof. The said decree has been in all respects duly complied with.

"On May 8, 1903, court of common pleas No. 4, Philadelphia county, having jurisdiction in the premises, in a suit in equity brought by George S. McNeil against Gilman, McNeil Co. et al., of March Term, 1903, No. 3,827, appointed Walter F. Trotter ancillary receiver of all assets of the said Gilman, McNeil Co., and security was on June 5, 1903, duly entered by the said receiver, as ordered by the court, and he entered upon his duties as such. A true copy of the decree of the court, marked 'Exhibit C,' is attached hereto and made part hereof.

"On the 25th day of June, 1903, suit was brought by Charles Allen v. Gilman, McNeil & Co. as of April term, 1903, No. 65, United States Circuit Court, for damages on account of bodily injuries accidentally suffered by him on February 27, 1903, within the period of the policy marked 'Exhibit A,' while an employé of the assured, and while on duty at one of the places and in one

of the occupations mentioned in the aforesaid policy of insurance marked 'Exhibit A,' and in and during the continuance of the work described in the policy. The above-described accident was such as were included in the terms of said policy of insurance, and said Gilman, McNeil & Co., Incorporated, has fully complied with all the conditions of the said policy of insurance and has completely fulfilled all the covenants therein contained. On the 26th day of January, 1904, judgment was entered in the above suit last above mentioned in favor of the plaintiff, Charles Allen, against the defendant, the said Gilman, McNeil & Co., in the sum of $5,000. No part of the said judgment has been paid.

"On the 6th day of February, 1904, an attachment execution was issued by the plaintiff in the case last mentioned directed against Gilman, McNeil & Co., defendant, and the Ætna Life Insurance Co., garnishee, return whereof was made nihil habet as to the defendant and served as to the garnishee. On the 20th day of February, 1904, the plaintiff filed interrogatories and rule to answer directed to the said Ætna Life Insurance Co., garnishee, and on the 14th day of March, 1904, said Ætna Life Insurance Co. filed answers thereto, admitting the facts.

"The following question is submitted for the determination of your honorable court: Whether the said Ætna Life Insurance Co. is or is not indebted to Gilman, McNeil & Co. under the aforesaid policy of insurance marked 'Exhibit A,' by reason of the entry of the aforesaid judgment against Gilman, McNeil & Co. in favor of the said Charles Allen in such manner as that the said indebtedness should be attachable by virtue of the above-recited attachment execution. If the court shall be of the opinion that the Ætna Life Insurance Co. is indebted to Gilman, McNeil & Co. in the manner aforesaid under the aforesaid policy and by reason of the judgment entered against Gilman, McNeil & Co. in favor of the said Charles Allen, then the court is requested to enter judgment in favor of the said plaintiff, Charles Allen, in the sum of $5,000. If the court shall be of the opinion that the Ætna Life Insurance Co. is not indebted to Gilman, McNeil & Co. in the manner aforesaid under the aforesaid policy of insurance by reason of the entry of judgment against Gilman, McNeil & Co. in favor of the said Charles Allen, then the court is respectfully requested to enter judgment in favor of the Ætna Life Insurance Co., garnishee.

"Each party reserves the right to appeal."

The policy of insurance need not be quoted in full. The relevant parts of that instrument are these: The insurance company agrees thereby—

"To indemnify Gilman & McNeil, of Chicago, county of Cook, state of Illinois, hereinafter called 'the assured,' for the period of twelve months, beginning on the 13th day of December, 1903, at noon, standard time, at the place where this policy has been countersigned, subject to the following special and general agreements which are to be construed as co-ordinate, as conditions:

"Against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered within the period of this policy by any employee or employees of the assured while on duty at the places and in the occupations mentioned in the schedule hereinafter given, in and during the continuance of the work described in the said schedule."

The special agreements contain nothing now of importance, but paragraphs 1, 2, 3, and 7 of the general agreements are relied upon by both parties as decisive of one branch of the dispute, and require, therefore, to be carefully considered. They are as follows:

"1. The assured upon the occurrence of an accident shall give immediate written notice thereof, with the fullest information obtainable at the time, to the home office of the company at Hartford, Conn., or to its duly authorized local agent. He shall give like notice with full particulars of any claim that

may be made on account of such accident, and shall at all times render to the company all co-operation and assistance in his power.

"2. If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy the assured shall immediately forward to the company every summons or other process as soon as the same shall have been served on him, and the company will at its own cost defend against such proceedings in the name and on behalf of the assured, or settle the same, unless it shall elect to pay to the assured the indemnity provided for in clause A of special agreements as limited therein.

"3. The assured shall not settle any claim except at his or its own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding, without the consent of the company, previously given in writing; but he may provide at the time of the accident such immediate surgical relief as is imperative. The assured when requested by the company shall aid in securing information, evidence, and the attendance of witnesses and in effecting settlements and in prosecuting appeals.

   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"7. No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within sixty days from the date of such judgment and after trial of the issue. No such action shall lie unless brought within the period within which a claimant might sue the assured for damages unless at the expiry of such period there is such an action pending against the assured, in which case an action may be brought against the company by the assured within sixty days after final judgment has been rendered and satisfied as above. The company does not prejudice by this clause any defences to such action which it may be entitled to make under this policy."

It is first to be noted that the plaintiff, being an attaching creditor, stands precisely in the shoes of his debtor, and must recover, if at all, upon such right as the debtor may possess against the garnishee. If the insured, therefore, upon the true construction of the policy, has a right to recover from the insurance company the amount of the judgment for $5,000 that was entered against the insured by the plaintiff in January, 1904, the insurance company may be compelled to pay that sum directly to the plaintiff; while, upon the other hand, if the insured has no right of action against the insurance company because the plaintiff's judgment has not yet been paid, the present suit must fail. Or the question may be stated more concisely in another form: Is the policy an agreement to indemnify against liability or to indemnify against loss? If the indemnity is against liability, the insured corporation had a right of action not later than the date when its liability was determined by the entry of the plaintiff's judgment, and the plaintiff may recover against the insurance company; if the indemnity is against loss, the insured has no right of recovery upon the policy, since no loss has yet been sustained.

The construction of this class of contracts has engaged the attention of several state courts, and an examination of the principal decisions will be useful. One of the earliest cases is Anoka Lumber Co. v. Fidelity, etc., Co., 63 Minn. 286, 65 N. W. 354, 30 L. R. A. 689, where the policy was construed to be an agreement to indemnify the insured against liability, and not an agreement to indemnify against loss. But the contract then under consideration differed from the policy in suit, for it is stated in the opinion to have been a contract insuring the plaintiff against "liability for damage,"

and not against "loss," and the report shows that the provision contained in the first sentence of paragraph 7 heretofore quoted was not found in the policy then being construed.

In Hoven v. Employers', etc., Corporation, 93 Wis. 201, 67 N. W. 46, 32 L. R. A. 388, the policy was essentially like the instrument that was before the Supreme Court of Minnesota. It recited that the insured had applied "for indemnity against claims for compensation for personal injuries to employé," and went on to agree that the insurance corporation "will pay to the employer * * * all such sums for which the employer shall become liable to his employé by virtue of the common law or of any statute." It was of such a contract that the Supreme Court of Wisconsin said:

> "It not only clearly contemplates that such an action may be brought before actual payment of the claim for damages by the assured, but by plain and unmistakable language it contracts to indemnify the insured against liability, not against damages. The case is not one requiring a resort to rules for judicial construction in order to determine what the parties intended by the language of the contract. Substantially the same kind of policy was under consideration in the recent case of Anoka L. Co. v. Fidelity, etc., Co. (Minn.) 65 N. W. 353, 30 L. R. A. 689, cited in the brief of counsel for respondent, where the court held it to be a contract of indemnity against liability, and said: 'The intention of the parties appears to be so plainly expressed that any other construction than the one here given to the contract would do violence to the language they saw fit to use.'"

In American, etc., Ins. Co. v. Fordyce, 62 Ark. 562, 36 S. W. 1051, 54 Am. St. Rep. 305, the policy was declared by the court to be a contract to pay liabilities, as appears by the following extract from the opinion:

> "The contract speaks for itself. It is couched in unequivocal language. The insurer binds himself to pay 'all damages with which the insured might be legally charged, or required to pay, or for which it might become legally liable.' This is plainly a contract to pay liabilities. * * * The difference between a contract of indemnity and one to pay legal liabilities is that upon the former an action cannot be brought and a recovery had until the liability is discharged, whereas upon the latter the cause of action is complete when the liability attaches [citing cases]. The measure of damages is the amount of the accrued liability."

See, also, the decision upon similar facts in Fidelity & Casualty Co. v. Fordyce, 64 Ark. 174, 41 S. W. 420.

The policy under discussion in Fenton v. Fidelity, etc., Co., 36 Or. 283, 56 Pac. 1096, 48 L. R. A. 770, contained provisions like those in the preceding cases, and the court followed these decisions, and held the contract to be an agreement to indemnify; saying:

> "By the express terms of the contract it agrees to indemnify the mill company not only against actual damage, but against liability for such damage."

So, also, in Ross v. American, etc., Ins. Co., 56 N. J. Eq. 41, 38 Atl. 22, where the agreement was "that said company will pay to the insured all damages with which the insured may be legally charged under the common law or any statute, not exceeding the amounts hereinafter limited, for or by reason of any accidental injuries, fatal or otherwise, happening to any employé or employés of the insured," etc., the vice chancellor held that the liability of

the insurance company arose when the injury happened, and not at the time when judgment for the injury was recovered against the insured. And, finally, the policy under consideration in Fritchie v. Miller's Extract Co., 197 Pa. 401, 47 Atl. 351, insured against "all liability for damages on account of fatal or nonfatal injuries," etc., and therefore fell within the same class as the contracts heretofore referred to. In none of these cases had the insurance company restricted its liability to indemnity against loss, or provided that no action should lie against it as respects any loss under the policy, unless the suit be brought by the insured himself to reimburse him for loss actually paid by him in satisfaction of a judgment.

In other courts, policies almost or altogether identical with the one in suit have been construed to be contracts to indemnify against loss, and not to indemnify against liability. In Travelers' Ins. Co. v. Moses, 63 N. J. Eq. 260, 49 Atl} 720, 92 Am. St. Rep. 663, the policy agreed to indemnify a lumber company against loss from liability for damages, etc., and contained also the following clause, which is practically the same as the first sentence of paragraph 7 in the policy now before the court:

"No action shall lie against the company as respects any loss under this policy, unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after a trial of the issue."

In view of this paragraph of the contract, the Court of Errors and Appeals held, as set out in the syllabus:

"(1) That not the amount of the employé's judgment, but the amount paid by the employer thereon, was the sum for which the insurer was responsible; (2) that the transfer of the employer's property to a trustee in bankruptcy, by operation of the United States bankrupt act, was payment within the requirement of this clause, and perfected the liability of the insurer for so much as the employé was entitled to receive out of the bankrupt's estate; (3) that this liability of the insurer passed, by force of the bankrupt act, to the trustee in bankruptcy as assets of the estate; and (4) that the amount for which the insurer is liable will be determined by ascertaining what percentage of the assets of the bankrupt, outside of this policy, will pay on all the debts proved against the estate, outside of the employé's judgment. The insurer is answerable for the same percentage of that judgment."

The Supreme Judicial Court of Maine in Frye v. Gas & Electric Co., 97 Me. 241, 54 Atl. 395, 59 L. R. A. 444, 94 Am. St. Rep. 500, had the same language before it, and construed the contract to be a contract of indemnity only. With regard to the provision expressly indemnifying the insured "against loss from common-law or statutory liability for damages," the court said:

"The contract of the insurer was with the gas company to indemnify that company 'against loss' from liability for damages on account of bodily injuries accidentally suffered by an employé and caused by the negligence of the assured. The use of the word 'indemnify' shows the object and nature of the contract. It was to reimburse and make whole the assured against loss on account of such liability. There can be no reimbursement when there has been no loss. The contract of insurance contains nothing to show that it was the object or intention of the contracting parties that the insurer should guaranty the gas company's liability for negligence to its employés. It was not a contract of insurance against liability, but of indemnity against loss by reason of liability."

After distinguishing the cases in Minnesota, Wisconsin, and Arkansas, the opinion goes on to say:

"In this case, as we have seen, the contract was one of indemnity only. It was not obtained by the gas company for the benefit of its employés, but for its own benefit exclusively, to reimburse it for any sum that the company might be obliged to pay and had paid on account of injuries sustained by an employé through its negligence. Independently of the condition in the contract of insurance above quoted, we should be compelled to construe this contract as one of indemnity only.

"But this provision puts an end to all questions or doubt, if any there could be. The parties have expressly provided in the contract which they chose to make that 'no action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment after trial of the issue.' By reason of the unequivocal language of this provision the undertaking of the insurer was expressly limited to liability in an action brought by the insured 'to reimburse him for loss actually sustained and paid by him.' There can be no doubt about the meaning of this language, and no question about the right of the contracting parties to insert such a provision in their contract for the purpose of making clear the nature and limit of the liability of the parties, or of either of them."

In a recent case in Iowa—Cushman v. Fuel Co., 122 Iowa, 656, 98 N. W. 509—a similar provision of the policy was that no action should lie against the insurance company unless brought "by the insured himself to reimburse him for loss actually sustained and paid in satisfaction of a judgment, after trial of the issue"; and the court decided that an unpaid judgment for a personal injury against the employer could not be enforced in an equitable action by the employé against the guaranty company; saying:

"The plaintiff was not a party to the contract, and had no legal rights thereunder. While the policy provided that the guaranty company might appear and defend for the fuel company in any action brought against it for personal injuries, such provision was for the protection of the guaranty company alone; and imposed no liability upon it beyond the terms of the contract. A court of equity can no more disregard the express provisions of the contract than could a court of law, and neither can make a new contract for the parties which would impose a liability not originally contracted for. Hence whatever relief a court of chancery might grant the plaintiff in any event must of necessity be based upon and be determined by the contract which the parties themselves have made. The only obligation of the guaranty company was to indemnify the fuel company against 'a loss actually sustained and paid in satisfaction of a judgment after trial of the issue.' This covenant is as explicit and certain as language could well make it, and, as between the parties to the contract, no recovery could be had against the guaranty company because the judgment against the fuel company was not paid, and consequently the covenant was not broken."

The last decision of which I have any knowledge is Finley v. United States Casualty Co., 83 S. W. 2, decided by the Supreme Court of Tennessee in November, 1904, in which the cases are reviewed and discussed, and a policy like the one in suit is construed to be a contract of indemnity against loss only, and to furnish no ground for a suit until the insured has himself paid the loss.

Against the rulings thus referred to is a single case—Sanders v. Frankfort, etc., Ins. Co., 57 Atl. 655—in which an opposite conclusion is reached by the Supreme Court of New Hampshire in construing a policy like the one now under consideration. The opinion

is careful, and deserves much respect; but it is certainly opposed to the weight of authority, and I am not satisfied with the construction of the policy that the court found it necessary to adopt in order to avoid the force of the provision forbidding suit by the insured until after he has paid the employé's judgment. The reasoning of the court is based for the most part upon the insurer's agreement under clauses 2 and 3 to defend or settle claims or pay the insured the full amount of the policy. This is regarded as equivalent to assuming the full liability for such a claim whenever the defense of the employé's suit is undertaken, and there is then no serious difficulty in taking the further step, and holding that the injured employé may enforce this liability by proceeding in equity directly against the insurance company. Clause 7 (it is numbered 8 in the New Hampshire policy) is limited to cases which the insurer does not defend, because it denies all liability therefor under the policy. To use the language of the court:

"The purpose of clause 8 was, therefore, to provide for the cases, if any should arise, where the company contended the claim arose from an accident not covered by the policy. It was intended to limit the liability of the company to damages ascertained by due course of judicial procedure in cases where they could not conduct the defense without waiving their claim that they were not liable, and as to which, if not liable, they were under no obligation to incur any expense. Its purpose was to prevent collusion between the plaintiff and the assured."

The objection to this construction, as it seems to me, is that it defeats a plain and unambiguous provision by what appears to be the pure assumption that the parties did not mean what they clearly said. The suits which they had in mind and provided for were suits by the insured for losses "under this policy," and for such losses the insurance company was liable whether it had defended the employés' suits or not. If it had defended these, it would probably be estopped to deny its liability afterwards. If it had refused to defend, taking the ground that the policy did not cover the particular injury, it could raise that question afterwards when a suit should be brought by the insured against it after the employé had obtained a judgment and had been paid. But after the insurer's liability has been established either by estoppel or in a suit brought against it by the insured such liability must of necessity be for a loss under the policy, and by the plain terms of the contract no action can be brought for "any loss under this policy," unless the insured has first paid it himself. So the parties have said, instead of confining the action to cases where the insurer has denied liability, and for that reason has refused to defend; and I do not see sufficient reason for endeavoring to explain away the unqualified language of the agreement contained in clause 7. It is broader than is supposed by the New Hampshire court, for it not only covers cases not defended by the insurer, but the case also where the insured has made payment under the compulsion of an execution, whether the insurer made defense or not. If the employer has available property, he must pay the writ in full. But if he is not in prosperous circumstances, and if, therefore, full

satisfaction can scarcely be hoped for, the employé may be willing to accept part of his claim as complete payment, while the insured may be unscrupulous enough to seek to recover the face of the judgment from the company. Evidently an execution may issue against the insured whether the company has defended the suit or not, and a full or partial payment that has been made on such a writ is beyond controversy, as it seems to me, included in the language of the policy now under consideration.·

If the conclusion to which I have come on this branch of the case is correct, it is not necessary to consider how, if at all, the plaintiff's right to recover on his attachment execution may have been affected by the appointment of a receiver in May, 1903, and the transfer to him of "all the property, assets, claims, choses in action and in possession, debts, demands, notes, and other evidences of indebtedness, and of other personal property of said Gilman, McNeil & Co., wherever it may be found."

In accordance with the case stated, judgment may be entered in favor of the Ætna Life Insurance Company, garnishee.