### United States Fidelity & Guaranty Company, Appellee, v. Maryland Casualty Company, Appellant.

### Gen. No. 17,938.

1. INDEMNITY, § 11*—*liability on indemnity insurance contract.* No action lies on an insurance contract of indemnity against loss or damages from liability, as distinguished from a contract of indemnity against liability merely, when no loss has in fact accrued to the insured.

2. INDEMNITY, § 20*—*who may sue on employer's indemnity contract.* An injured employe of insured or any other third party cannot maintain action on an indemnity insurance contract since no privity exists between the parties.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

3. INDEMNITY, § 14*—*when surety on appeal bond entitled to indemnity.* Where an employer's indemnity insurance company in prosecuting an appeal for the insured procured a guaranty company to sign an appeal bond for the insured on its representations that it was carrying the liability of the insured, *held,* that though the guaranty company cannot recover from the insurance company for loss sustained by it in being compelled to pay the judgment upon an implied promise of the insurance company to hold it harmless, a recovery would be sustained upon the ground of estoppel.

Appeal from the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 15, 1913.

J. F. DAMMANN, JR., for appellant.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

On November 30, 1905, the Maryland Casualty Company (hereinafter called the casualty company), through its general agents in Chicago, issued to the Collins Coal Company (hereafter called the coal company) of Indiana a policy of employer's liability insurance, whereby the casualty company agreed, for a period of twelve months, to indemnify the coal company (the assured) "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death, accidentally suffered while this policy is in force, by any employe or employes of the assured while at the places described in the Schedule, in and during the prosecution of the work described in the Schedule, subject to" certain conditions.

Conditions "C," "D," "E" and "F" of the policy are as follows: "Condition C. Upon the occurrence of an accident the Assured shall give immediate written notice thereof, with all the information obtainable at the time, to the Company's Home office or to the

*See **Illinois Notes Digest, Vols. XI to XIV,** same topic and section number.

Company's authorized agent. If a claim is made on account of such accident the Assured shall give like notice thereof with full particulars.    The Assured shall at all times render to the Company all co-operation and assistance in his power.

"Condition D.    If thereafter any suit is brought against the Assured to enforce a claim for damages on account of an accident covered by this policy, the Assured shall immediately forward to the Company's Home Office every summons or other process as soon as the same shall have been served on him, and the Company will, at its own cost, defend such suit in the name and on behalf of the Assured unless the Company shall elect to settle the same or to pay the Assured the indemnity provided for in Condition A hereof.

"Condition E.    The Assured shall not voluntarily assume any liability, nor shall the Assured, without the written consent of the Company previously given, incur any expense or settle any claim, except at his own cost, nor interfere in any negotiation for settlement or in any legal proceeding; except that the Assured may provide at the time of the accident such immediate surgical relief as is imperative.    Whenever requested by the Company, the Assured shall aid in securing information and evidence and the attendance of witnesses and in effecting settlements and in prosecuting appeals.    The Assured shall furnish bonds in order to take any suit to the higher courts, when required, and the Company will pay the premiums, if any, to corporate surety companies.

"Condition F.    No action shall lie against the Company to recover for any loss under this Policy unless it shall be brought by the assured for loss actually sustained and paid in money by the Assured in satisfaction of a judgment after trial of the issue; nor unless such action is brought within ninety (90) days after such judgment by a court of last resort against the

Assured has been so paid and satisfied. The Company does not prejudice by this condition any defenses to such action it may be entitled to make under this Policy."

On March 26, 1906, John DePugh, an employe of the coal company, was injured, and thereafter brought suit against the coal company in the Putnam Circuit Court in Indiana to recover damages for the injuries sustained. The coal company reported the injury and the institution of the suit to the casualty company, which, under the terms of the policy, assumed the defense of the suit. DePugh recovered a judgment in the Circuit Court against the coal company for $4,000, from which judgment the casualty company elected to prosecute an appeal to the Appellate Court, and to this end an appeal bond in the sum of $5,500 was procured to be executed by the United States Fidelity & Guaranty Company (hereinafter called the guaranty company) as surety. During the pendency of said appeal in the Appellate Court the coal company became insolvent and thereafter said judgment of the Circuit Court against said coal company was affirmed by the Appellate Court. Upon the affirmance of said judgment by the Appellate Court demand for the payment thereof was made upon the guaranty company by DePugh, who, thereafter, instituted suit against said guaranty company to recover the amount of said judgment, and such proceedings were had that said DePugh recovered judgment against said guaranty company, as surety on said appeal bond, for $4,725.95, which judgment was paid and satisfied by the guaranty company. Notwithstanding notice and demand by the guaranty company upon the casualty company to pay said judgment recovered by DePugh against said coal company and to save the guaranty company harmless in respect to its liability on said appeal bond, and to defend said suit brought against it by DePugh, and to pay the judgment recovered against it in said suit, the casualty company refused to comply there-

with and denied any liability therefor. This suit was then instituted in the Municipal Court by the guaranty company against the casualty company to recover the amount so paid by the guaranty company, together with its necessary costs and expenses, and upon a trial by the court without a jury there was a finding and judgment against the casualty company for $5,234.29, to reverse which judgment said casualty company prosecutes this appeal.

It is conceded that the liability of the coal company to DePugh was covered by the policy issued by the casualty company, and that, if the coal company had paid and satisfied the judgment recovered against it by DePugh out of its own funds, the casualty company. would be required to reimburse the coal company; but it is insisted that no liability exists against the casualty company in favor of the guaranty company, as surety upon the appeal bond, for money so paid and expended by it.

A right of recovery in the case is predicated, first, upon an implied promise and undertaking by the casualty company to indemnify and hold the guaranty company harmless; second, upon an express promise and agreement by the casualty company so to do; and, third, upon an application of the doctrine of estoppel *in pais,* whereby the casualty company is estopped from asserting that it was not absolutely and unconditionally liable to the coal company and obligated to pay the final judgment against it upon its affirmance.

It is indisputably established by the evidence that the appeal from the judgment of the Circuit Court against the coal company was prosecuted upon the insistence and by the direction of the casualty company, and that the casualty company procured from the guaranty company the formal application required to be made to it by the coal company to become surety upon the appeal bond, and that the casualty company paid the premiums upon said bond to the guaranty company, but the evidence relating to the negotiations

between the parties, which resulted in the execution of the appeal bond by the guaranty company, as surety, is conflicting.

William G. Cress, an employe of the firm of Conkling, Price & Webb, the agents in Chicago of the guaranty company, testified that a day or two before the appeal bond was executed David Reid, manager of the Chicago division of the claim department of the casualty company, came to the office of the guaranty company and inquired if the guaranty company would execute an appeal bond for the coal company; that witness looked up the rating of the coal company and informed Reid that the guaranty company would not sign the bond; that Reid said the case was in the hands of the casualty company and was covered by its liability policy to the coal company; that witness told Reid that would not do, that the guaranty company would have to have indemnity of some kind; that witness then referred Reid to Mr. Price, a member of the firm; that Price told Reid that the guaranty company would require the indemnity of the casualty company, to take care of it, in that case; that Reid told Price that the casualty company carried the case and there was no reason why anything should be given; that the claim was covered and would be taken care of by the casualty company and that was all that was necessary; that Price said he would have to have the indemnity of the casualty company in writing.

Fred A. Price testified that he told Reid that the guaranty company could not sign the bond unless it had a letter from the casualty company showing that it was defending the case and that the case was covered by its policy; that he thought Reid remarked that the casualty company was not accustomed to do that; that Reid said he would bring a letter; that in a little while Reid returned with a letter, and said that the casualty company was behind the case and would take care of it; that the letter was accepted as security to keep the guaranty company harmless in signing the

444 APPELLATE COURTS OF ILLINOIS.

U. S. Fidelity & G. Co. v. Maryland Casualty Co., 182 Ill. App. 438.

bond; that the bond would not have been executed without the letter; that the formal application for the appeal bond was accompanied by a personal indemnity bond executed by O. S. Richardson, the president of the coal company; that the general custom of the guaranty company in executing appeal bonds in like cases was to require, in addition, an indemnifying agreement or letter from the casualty company; that he told Reid that the guaranty company would like to have Richardson's indemnity also; that he knew nothing about the financial responsibility of Richardson.

On behalf of the casualty company David Reid testified that when the question of collateral indemnity was raised he told Kress and Price that he, as a representative of the casualty company, could not indemnify the guaranty company; that he absolutely refused to do so; that Price asked him if he would write a letter to the effect that the casualty company was carrying the liability for the coal company, and that the case in which the appeal bond was required was covered by the casualty company; that the letter in evidence was written by him in compliance with the request of Price.

The letter referred to by the witnesses and admitted in evidence is as follows:

"MARYLAND CASUALTY COMPANY,
Baltimore
*　*　*　*　*　*　*

David Reid,
Manager Chicago Claim Division.
*　*　*　*　*　*　*

Chicago, Ill.
*　*　*　*　*　*　*

June 3rd, 1907.

Conkling, Price & Webb,
New York Life Bldg.,
Chicago, Illinois.
Gentlemen:
This is to certify that we are carrying the liability of the Collins Coal Company, and that the case of

John DePugh vs. Collins Coal Co., for which an appeal bond is now required is covered under our policy, and we are defending the case.

Yours truly,

David Reid,

Manager Chicago Claim Div."

It may be remarked that the employer's liability policy here involved is a contract of indemnity as distinguished from a contract which insures directly against liability. The policy indemnifies the coal company "against loss from the liability imposed by law," etc., and condition "F" of the policy provides that no action shall lie against the insurer to recover for any loss under the policy, unless it shall be brought by the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue.

In *Poe v. Philadelphia Casualty Co.*, 118 Md. 347, it was said by the Court of Appeals of Maryland: "In tracing the history of these policies, it will be found the earlier ones were so worded as to insure employers against *liability* incurred to their employes for death or injuries resulting from the employer's negligence; and the courts humanely and rationally held that liability was fixed by the rendition of a final judgment, and that the casualty companies were liable on their contract, though the employer had not actually discharged his liability by payment."

The distinction which exists between the two classes of such insurance contracts is well stated in *American Employers' Liability Ins. Co. v. Fordyce*, 62 Ark. 562, as follows: "The difference between a contract of indemnity and one to pay a legal liability is that upon the former an action cannot be brought and a recovery had until the liability is discharged; whereas upon the latter the cause of action is complete when the liability attaches."

In this case, the casualty company claims exemption from liability primarily upon the ground that no loss

accrued to the coal company, because the judgment in favor of DePugh against the coal company was not in fact paid and satisfied by the coal company.

Where, as here, the contract is one of indemnity against loss or damage from liability and not one of indemnity against liability merely, the great weight of authority is to the effect that in the absence of proof of waiver or estoppel no action either at law or in equity upon the contract will lie against the insurer by an injured employe of the insured, or by any other third party. Recovery in such cases was denied upon the ground that no loss had in fact accrued to the insured, and upon the further ground that no privity existed between the insurer and such third party. *Frye v. Bath G. & E. Co.*, 97 Me. 241; *Connolly v. Bolster*, 187 Mass. 266; *Cushman v. Carbondale Fuel Co.*, 122 Iowa 656; *Allen v. Gillman*, 137 Fed. 136, affirmed in 76 C. C. A. 265, 145 Fed. 881; *Poe v. Philadelphia Casualty Co.*, 118 Md. 347; *Kinnan v. Fidelity & Casualty Co.*, 107 Ill. App. 406.

In *City Trust, etc., Co. v. Haaslocher*, 101 App. Div. (N. Y.) 415, cited and relied upon by the guaranty company, the contract involved provided that the insurer should save the insured harmless from judgments, and the case is, therefore, to be distinguished from the case at bar.

As the casualty company was neither the principal on the appeal bond nor obligated, by the terms of its liability policy, to pay the judgment against the coal company, it may well be doubted whether a right of recovery can be predicated upon an implied promise or undertaking by it to indemnify and hold the guaranty company harmless, and we are clearly of the opinion that the competent evidence in the record fails to show an express promise or agreement by it so to do.

In view of the fact that a right of recovery herein may be properly sustained upon the ground of estoppel, we deem it unnecessary to extend this opinion by

a further discussion of the other grounds argued and relied upon by the guaranty company to sustain the judgment.

The evidence heretofore recited tends to show, and the trial court was warranted in finding, that the guaranty company was not informed whether the policy issued by the casualty company insured the coal company against liability or against loss from liability; that before the guaranty company would consent to execute the appeal bond as surety, it demanded from the casualty company a statement in writing that the case was covered by its policy to the coal company, and that it was defending the case; that in response to such demand and for the purpose of procuring the execution of the appeal bond by the guaranty company, the casualty company made and delivered the written statement, in evidence, to the guaranty company, which then executed said appeal bond relying upon the truth of said written statement and in the belief that the casualty company was obligated to pay the judgment recovered by DePugh against the coal company upon its affirmance.

The letter of July 3rd, 1907, specifically represents that the casualty company was then "carrying the liability of the Collins Coal Company" in the case of John DePugh, in which the appeal bond was required. The statement by the casualty company that it was *carrying the liability* of the coal company, if it needs any interpretation, is equivalent to saying that the casualty company had, by the terms of its policy, assumed the liability of the coal company in the DePugh case, or that the casualty company had insured the coal company against liability in the DePugh case. The appeal bond having been executed by the guaranty company upon the faith of such representation by the casualty company, the casualty company is estopped from asserting that it was not bound to pay the judgment upon its affirmance.

It is said that the evidence shows that the guaranty

company refused to execute the bond upon the faith of the verbal statements by Reid to the effect that the case was covered by the policy, and that the liability policy to the coal company covered the case. True, but the guaranty company demanded something in writing, and the writing represents that an obligation existed to pay the judgment.

The second proposition of law submitted by the casualty company was modified by the court and held as modified. Counsel says: "There is no quarrel with the correction, in so far as it is a true interpretation of the contract." The proposition, as submitted, merely sought to procure a judicial interpretation of the contract, and it is conceded that as held by the court the proposition truly interprets the contract.

The third proposition, submitted by the guaranty company and refused by the court, was sufficiently covered by the fourth proposition held by the court. The fifth proposition, submitted by the guaranty company, was properly refused because it was not applicable to the admitted facts in the case.

The conversations between Reid, the agent of the casualty company, and Richardson, the president of the coal company, were not relevant to the issues involved between the present parties, and were improperly admitted in evidence, but in our view of the case the action of the trial court in admitting such conversations in evidence becomes unimportant.

Evidence of the methods which obtained, in certain instances, in the conduct of like business between the guaranty company and other casualty companies was properly excluded upon the cross-examination of the witness, Kress. The usual and customary method of conducting like business was disclosed by the testimony of the witness, Price.

There is no substantial error in the record and the judgment is affirmed.

*Judgment affirmed.*