## S. P. DRAKE *et al.*

### *v.*

## MOSES SHERMAN *et al.*

*Opinion filed April 17, 1899.*

1. CONTRACTS—*contract to secure loss on overdrafts construed.* A contract with a bank whereby certain parties agree to secure the banking firm against "any loss they may sustain through and by virtue of overdrafts * * * or money advanced on the checks of demand or drafts" of a third person, refers to future transactions, and does not include a then existing overdraft of which the sureties had no notice.

2. PAYMENTS—*sureties entitled to protection in application of payments.* Sureties on a contract to secure a bank against loss on future overdrafts by the principal have an interest in such principal's account and are entitled to have payments to the bank applied upon the account guaranteed, in the absence of any direction by the principal as to their application.

3. SAME—*extent to which overdraft is paid by deposits.* As between a bank and sureties on a contract guaranteeing a depositor's future overdrafts, an overdraft existing at the time the contract of guaranty was made will be treated as paid only to the extent to

which such overdraft is reduced by the amount of the depositor's largest balance at any time during the existence of the contract.

4. JUDGMENTS AND DECREES—*when decree in accounting is not erroneous.* A decree on a bill by sureties for an accounting, which finds the amount due and orders payment within thirty days or in default thereof that execution shall issue, is not erroneous in not providing that the amount be paid as a condition of relief.

*Drake* v. *Sherman*, 79 Ill. App. 413, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Moultrie county; the Hon. EDWARD P. VAIL, Judge, presiding.

JOHN R. & WALTER EDEN, for appellants.

OUTTEN & ROBY, for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On the 11th day of March, 1893, one John McDermott, a grain merchant of Lake City, was doing business with the Hardware Bank at Lovington, Illinois, of which bank appellants were proprietors, and on that date McDermott and appellees executed and delivered to appellants an instrument in writing, as follows:

"For and in consideration of one dollar in hand paid, the receipt whereof is hereby acknowledged, we, the undersigned, hereby agree to pay Drake, Hostetler & Son, proprietors of Hardware Bank, at Lovington, Illinois, any loss they may sustain through and by virtue of overdrafts on said Drake, Hostetler & Son's books of accounts, or money advanced or paid out by them on the checks of demand or drafts of John McDermott, of Lake City, Illinois, for the purpose of buying stock, grain or any other purpose whatsoever; that said Drake, Hostetler & Son may advance or pay out money on the aforesaid John McDermott's checks of demand or drafts.

"Signed by us this 11th day of March, 1893.

J. McDERMOTT,

Signatures witnessed by

JOHN McDERMOTT,

MOSES SHERMAN,

PATRICK X McDERMOTT,
his mark

~ Witness.

W. C. FOLEY."

At the time the agreement was executed McDermott had overdrawn his account at appellants' bank $3493.24, but this fact was unknown to appellees, who signed the foregoing contract with him. It also appears that McDermott continued to do business with the bank from March 11, 1893, until the 29th day of October, when he failed. During all of this time his account with the bank was overdrawn. The lowest amount to which he at any time from March 11 to October 29 reduced his indebtedness to the bank was the sum of $1410.83 on April 18, 1893. On the 29th of October, 1893, as before said, McDermott failed, and three days after the failure one of appellants called in appellees and represented that they were liable on their contract, on account of McDermott's overdrafts. at the bank, $5272.95, and insisted that they should at once adjust the account by giving their notes. Appellees, relying upon the statements and representations, and not knowing at that time any matter was included in said $5272.95 except such amounts as they were liable for under the agreement, and believing the statements made to them, executed their promissory notes to appellants for the sum represented to be due under their agreement. The notes so given were judgment notes, dated November 2, 1893,—one for $1810.35, due in ninety days after date, one for $1863.03, due in six months, and one for $1960.65, due in twelve months. In making up the sum of $5272.95 for which these three notes were given, appellants included an overdraft of $1410.83 which was standing on their books against McDermott at the time the contract was executed by appellees, March 11, 1893. They also included $107.46 interest improperly charged. It also appears that appellees, without any knowledge that the notes contained the two items above named, on April 16, 1894, paid the note first due and $590.63 on the second note. It also appears that on November 8, 1894, appellants, without notice to appellees, took judgment by confession for the balance of the two notes unpaid, including

an attorney's fee of $100, amounting to the sum of $3387.21. Appellees filed this bill praying for an injunction to restrain the collection of the judgment so entered against them, and praying that an account be taken, and that the true balance be ascertained and determined between appellees and appellants under the contract of March 11, 1893. Appellants answered the bill, and a replication having been filed, a hearing was had on the pleadings and evidence introduced by the respective parties.

The court, in its decree, found that on March 11, 1893, John McDermott was indebted to appellants, by way of overdrafts on the bank, to the amount of $3493.24, of which appellees had no knowledge; that they believed, at the time they executed the contract, its object was to secure the bank from loss on account of money thereafter to be advanced to McDermott; does not find that the answer to appellee Sherman's inquiry as to the condition of McDermott's account was untrue; that there was no settlement of the account with McDermott from March 11, 1893, to the time when he ceased doing business, and during all that time his account was overdrawn, the lowest sum to which it was reduced being $1410.83; that the sum of $5272.95, claimed by Drake at the time of the attempted settlement, included interest, $107.46, improperly charged against appellees, and $1410.83 of the balance of the indebtedness of McDermott to the Hardware Bank on March 11, 1893, for which, under the contract, appellees are not liable; that deducting these items from said amount of $5272.95 leaves a balance of $3751.66, for which amount the court finds appellees were, under said agreement, liable; finds that the payments thereafter made by appellees to appellants, when credited upon the last mentioned amount, (charging appellees upon said amount five per cent per annum from November 2, 1893,) reduced the balance due from appellees to appellants to the sum of $1419.70 on April 16, 1893. The court decreed that appellants recover of appellees the sum of $1419.70, with

interest thereon at five per cent per annum from April 16, 1894, within thirty days from the date of the decree, and in default of payment that execution issue, etc., and that appellants, and each of them, be perpetually enjoined from any further proceedings for the collection of the judgment described in the bill except as to said sum of $1419.70, and upon payment of said sum the judgment shall become null and void as against appellees, etc.

Each party excepted to portions of the decree. The case was appealed to the Appellate Court for the Third District by appellants, and that court, at the May term, 1898, affirmed the decree. Appellants prayed an appeal to this court, which was allowed.

Several errors have been assigned by the appellants for a reversal of the decree, but in the argument of counsel but two grounds are relied upon. They are as follows: First, that in addition to the amount of $1419.70, with interest at five per cent per annum from the 16th day of April, 1894, (the amount decreed by the court to be paid by appellees to appellants,) there should have been allowed them the sum of $1410.83, with interest thereon at five per cent per annum from April 18, 1893; and second, that the decree should have provided that appellees, as a condition upon which relief should be granted, should pay appellants whatever sum the court might find due them, within a time to be fixed by the decree, instead of providing that upon failure to pay within thirty days an execution should issue in order to collect such sum.

At the time the contract of March 11, 1893, was executed by appellees McDermott was indebted to appellants in the sum of $3493.24 on an overdraft in the transaction of his business with the bank. Appellees were never requested to assume, pay or in any manner become liable for this overdraft. Indeed, they never knew of its existence until long after McDermott failed. There is nothing in the terms of the contract of March 11, 1893, which required appellees to assume or pay any pre-existing

indebtedness of McDermott to appellants. On the other hand, the contract expressly provides that appellees are to pay appellants any loss they may sustain on account of overdrafts, etc. The fair import of the language of the contract is, that appellees should be liable for transactions which should occur in the future after the contract was executed, and nothing more. Doubtless, if it had been the intention of the parties that appellees should assume the payment of a debt then in existence from McDermott to appellants, language showing such an intention would have been used by the contracting parties.

It is, however, contended that the overdraft standing on the books of the bank on March 11, 1893, had all been paid before the 29th of October, when the bank closed its account with McDermott. It is true that from March 11, 1893, to November 1, 1893, McDermott deposited with the bank, at various times, sums of money aggregating $44,-914.33, and in this way appellants claim that the overdraft was paid. But during the time McDermott was making deposits with the bank he was at the same time drawing money out on checks, which amounted from March 11, 1893, to November 1, 1893, in the aggregate, to the sum of $46,652.29. During the time stated, instead of the overdraft of $3493.24 being paid it was increased to the sum of $5272.95. The fact that the money deposited exceeded the amount of the overdraft did not, as we understand the subject, establish the fact that the overdraft was paid. Suppose McDermott, beginning with March 12, 1893, had each day, for a period of thirty days, purchased grain or other commodity amounting to $1000, and not having the money had given a check on the bank to the owner of the article purchased, which the bank paid. At the same time he shipped the grain to market and drew a draft on the consignment for $1000, which was deposited in the bank. At the end of thirty days the deposits in the bank would amount to $30,000, and yet the overdraft standing on the books of the bank would

remain just as it was before the transaction mentioned began. Here the overdraft of $3493.24 standing on the books of the bank on March 11, 1893, remained an overdraft, and would continue as such (although it might fluctuate from day to day) until such time as it was actually paid, which in this case never occurred.

It is also claimed in the argument that under the rules of law which govern the application of payments the overdraft was paid before McDermott's failure. From the 11th day of March, 1893, until November 1, 1893, McDermott was continuously buying grain and paying for the same by checks on the bank, and shipments were made and the proceeds of the grain were deposited in the bank. From the manner in which the business was transacted, the only conclusion to be drawn is that the parties contemplated that the money placed in the bank from proceeds of grain sold was intended to apply in payment of the checks drawn, from day to day, on the bank. There is no intimation in the evidence, from any quarter, that the proceeds of McDermott's business after appellees had executed the contract of March 11, 1893, should be applied in payment of any prior transaction between him and the bank. We do not think, therefore, that this is a case where the doctrine of the application of payments should apply. But if it were, there is nothing in the doctrine of the application of payments which can aid appellants here. McDermott, the debtor, gave no directions, so far as the evidence shows, where the money deposited from day to day should be applied, and the bank made no application. Then, as held in *Koch* v. *Roth*, 150 Ill. 212, where no application is made by either party the court will make it according to the justice and equity of the case. Adopting that rule, we think it apparent that appellees are entitled to have the money deposited after March 11, 1893, applied on transactions between McDermott and the bank occurring after that date. After the contract of March 11 was executed, the

account between McDermott and appellants was one in which appellees became interested. They were by that contract sureties for McDermott, and as such they had the right to insist that all payments made by McDermott after they became his sureties should be applied on the account which they had guaranteed, and it is a duty imposed upon a court of equity to protect the rights of sureties in a case of this character.

As to the second contention, that the decree should have provided that appellees, as a condition upon which relief should be granted, should pay appellants whatever sum was found to be due, we do not regard the decree in this respect erroneous. The court found, by its decree, the amount due appellants and decreed its payment within thirty days, and in default of payment ordered an execution to be issued. The decree affords full protection to appellants for the amount that is due, and that is all that they were entitled to ask.

It appears from the evidence that on the 20th day of October, 1893, Sherman, one of the appellees, called upon appellants at their bank and inquired as to the condition of McDermott's account at that time, and appellees claim that appellants gave a false report, showing that the overdraft was much less than it really was. The court, however, found that the evidence failed to show that a false report was given, and appellees, by cross-errors, call in question this feature of the decree. It is conceded that the inquiry was made by appellee Sherman, but the reply that was given is a matter in dispute. Two witnesses testified upon this question and their evidence is in direct conflict, and we are not prepared to say that the finding of the court is contrary to the weight of evidence.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*