### Frank W. Shultz, Appellee, v. Isaac Miller-Hamilton et al., Appellants.

### Gen. No. 19,260.

1. PLEADING—*reference to exhibits.* A declaration cannot make attached exhibits a part of the pleading by referring to them as such.

2. PLEADING, § 476*—*when counts in declaration sufficient after verdict.* In an action for breach of an agreement to repurchase bonds and stock at the expiration of two years, counts in the declaration defective in not averring a proper demand on defendants and tender of performance by plaintiff, etc., *held* sufficient after verdict.

3. APPEAL AND ERROR, § 1682*—*when error in sustaining demurrer waived.* Defendants, by filing amended pleas, waive their right to urge error in sustaining a general demurrer to their original pleas.

4. PLEADING, § 128*—*when replication not responsive to plea.* In an action for breach of a contract to repurchase stock and bonds at the expiration of two years, where one of defendants' pleas averred that the place for delivery and payment of the stock and bonds was at a certain bank and that plaintiff at no time delivered or offered to deliver at said bank, *held* that a replication to the plea averring that none of the defendants were ready or offered at such bank or elsewhere to accept and pay for said bonds or stock was no answer to the plea for the reason it evaded the issue of tender.

5. INSTRUCTIONS, § 131*—*when rulings on instructions as to tender erroneous.* In an action for a breach of a contract, where plaintiff

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Shultz v. Miller-Hamilton, 189 Ill. App. 396.

in his pleadings based his right to recover on his complete perform-ance and not defendants' waiver thereof, the giving of an instruction for plaintiff ignoring the necessity of tender and the refusal of an instruction offered by defendants making such tender essential to plaintiff's recovery, *held* error.

6. CONTRACTS, § 387*—*when proof of performance essential to put defendants in default.* Under a contract to repurchase stock and bonds, where a place is designated therein as the place of delivery and payment, in order for plaintiff to put defendants in default he must show in addition to his offer of performance that such stock and bonds were at such place for delivery unless such requirement was waived.

7. GAMING, § 16*—*when provision in contract for resale not invalid.* A contract for the sale of stock and bonds giving the buyer the right to return the same after two years and receive the pur-chase price, *held* to be one of conditional sale and not an option contract, in contravention of section 30 of the Criminal Code, J. & A. ¶ 3733.

8. SALES, § 374*—*when instructions as to contribution to fore-closure sale properly refused.* In an action for breach of a con-tract to repurchase stock and bonds, a requested instruction that plaintiff could not recover if certain persons purchased for the plain-tiff and other bondholders the property at a foreclosure sale under a trust deed to secure the bonds, and if he contributed money for that purpose, and another requested instruction of the same purport requiring plaintiff to prove defendants' consent to such contribution, *held* properly refused, there being nothing to show that plaintiff's participation in the foreclosure sale would relieve defendants from their obligations under the contract.

9. SALES, § 374*—*when requested instruction as to merger proper-ly refused.* In an action for breach of a contract to repurchase stock and bonds, where it appeared that there had been a foreclosure of a trust deed given to secure the bonds, a requested instruc-tion that if in the decree of foreclosure the court found the amount due on the bonds, then they were merged in said decree, and therefore of no validity and not capable of delivery after entry of said decree, *held* properly refused, it appearing that the decree was not a final one or judgment for money enforceable by execution.

10. MORTGAGES, § 635*—*right to deficiency decree.* It is only by virtue of a statute that a money decree in a foreclosure proceeding can be rendered.

GRIDLEY, J., not being a member of this branch of the court when the case was orally argued, took no part in this decision.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1913. Reversed and remanded. Opinion filed November 10, 1914.

CHARLES J. O'CONNOR, JOSEPH P. MAHONEY and CHARLES A. ATKINSON, for appellants.

ZANE, MORSE, McKINNEY & McILVAINE, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a judgment in plaintiff's favor for $30,035.83. The suit was brought by appellee for breach of a written contract entered into June 10, 1908, between him as one party and appellants and one Wiley, who was also sued but not served, as parties of the other part. By a previous agreement between Shultz and Hamilton, dated April 4, 1908, the former purchased of the latter $25,000 in amount of bonds of the Big Horn Basin Development Company, a Wyoming corporation, paying therefor $23,750, and the accrued interest thereon. With said bonds went as a bonus a certificate for 25,000 shares, par value of $1 each, of the capital stock of another corporation. The bonds bore six per cent. interest, and were dated January 1, 1905, forming part of an issue of $750,000. Under said agreement Shultz had, at the time of the execution of the contract of June 10th, the right to return said bonds and stock and receive the purchase price therefor with the accrued interest on the bonds, but by said contract he agreed to retain the bonds and stock, waive such right and cancel such agreement. In consideration thereof and "one dollar and other valuable considerations," appellants and said Wiley, by the contract in question, jointly and severally covenanted and agreed in substance:

First:   So long as Shultz remains the holder of said bonds to guarantee payment of the interest thereon as it falls due, and in default of payment thereof by the company, to pay the same.

Second:   Two years after date to take up and purchase said bonds and stock and pay therefor $23,750 with accrued and unpaid interest on the bonds; provided, however, Shultz might (a) exchange said bonds and stock for other securities or evidences of indebtedness of said company, in which event they will pay the same amount therefor, two years from date; or (b) sell the bonds and stock, in which event they shall be relieved from liability on account thereof.

Third:   In event of foreclosure sale under the trust deed, before the expiration of two years, and the proceeds therefrom are insufficient to pay the repurchase price so agreed on, to pay Shultz the difference or deficit, reserving to them, however, the right to make such repurchase before the expiration of said two years.

The company defaulted on its bonds shortly after the execution of the contract of June 10th, paying no interest accruing thereafter, in consequence of which action was taken by the trustee named in the trust deed given to secure the bonds, a receiver of the company's property appointed, a decree of foreclosure entered May 5, 1909, a sale of the property thereunder made December 2, 1909, and a deed thereof executed to certain persons as trustees for certain bondholders November 29, 1910.

On November 16, 1908, while such action was pending, a so-called reorganization agreement was entered into by certain bondholders, including appellants, looking towards a reorganization of the company, but the project was abandoned and the agreement surrendered before said sale.  Pursuant thereto and subject to its terms bondholders, signing the same, were to deposit their bonds with the Colonial Trust &

Savings Bank of Chicago as depositary. Shultz did not sign the agreement but at defendants' request did, on February 21, 1909, place his bonds with said depositary, receiving its receipt therefor.

On November 20, 1909, at a meeting of some of the bondholders, a committee was appointed to raise a cash fund and bid in the property at the foreclosure sale for the benefit of those who should contribute thereto. Notice of appointment of the committee and surrender of the reorganization agreement was sent to the several bondholders. Shultz and other bondholders, including defendants, contributed five per cent. of the par value of their holdings and said committee, as trustees, bid in the property at the foreclosure sale for $50,000, and received a deed therefor as aforesaid. It appears that said sum was absorbed in the foreclosure expenses and satisfaction of prior liens. As such trustees, and pursuant to an agreement with the contributing bondholders, they formed a new corporation, the Shoshone River Canal Company, to which they deeded the property, and the stock thereof was issued dollar for dollar to the bondholders so contributing, Shultz receiving a certificate for 250 shares, dated July 26, 1912, being after institution of this suit. At the trial he tendered to defendants said certificate of stock, together with the receipt of the Colonial Trust & Savings Bank for the bonds and certificates of stock given with the bonds, offering to indorse and transfer the same. No actual tender of any kind, however, was made before the trial.

Shultz repeatedly demanded of appellants payment of interest on his bonds without avail, and on June 15, 1910, through his attorneys wrote Hamilton, requesting that he take back the bonds and pay him the repurchase price so agreed upon and the amount he had contributed for the purchase of the property, and mailed a copy of said letter to both Moore and Young. A few days later, just before beginning this suit, he

called up Moore and Hamilton by telephone and insisted upon payment of the bonds and interest. Moore said he did not intend to pay, and Hamilton at first suggested that the matter stand for the time being, but when Shultz insisted upon payment, saying he wished to avoid litigation, Hamilton told him to "go ahead."

The declaration is in three counts. The first two are predicated on a breach of the covenant to repurchase the bonds and stock at the expiration of the two years' period. The third count is the only one on which a claim to recover the deficit on foreclosure could possibly rest, but it is fatally defective. It undertakes to make the contract in question and the other agreements aforesaid part of the pleading by referring to them as attached exhibits. While this is a familiar practice in chancery, it is not recognized either at common law or under our modified form of practice. See *Jones v. City of Chicago,* 167 Ill. App. 175, and cases there cited. Without reading into this count the exhibits referred to therein, its averments as to the contract sued on are incomplete and insufficient to state a cause of action. The judgment, therefore, must stand, if at all, on the other counts.

But it is urged that they do not state a cause of action,—that they state mere conclusions and do not show a proper notice or demand on defendants for performance nor a tender of performance by plaintiff, nor that he was ready, willing and able to perform. They do aver a demand and an offer to deliver to defendants the stock and bonds, and complete performance on plaintiff's part, and, therefore, we think the alleged defects are such as would be cured by verdict. *Sargent Co. v. Baublis,* 215 Ill. 428.

To the declaration were filed six special pleas to which a general demurrer was sustained, and thereafter, on leave granted, defendants filed what in some parts of the record are referred to as "amended" and

in other parts as "additional" pleas, and by thus pleading over waived their right to urge error in sustaining such demurrer. Nor can they urge that it was an abuse of judicial discretion for the court to refuse their request made after obtaining said leave to file a special demurrer to the declaration.

Appellants also urge that the demurrer to the special pleas should have been carried back to the declaration, but whatever might be said with respect to the third count, we do not deem the first two counts repugnant to a general demurrer.

To the additional pleas replications were filed and error is urged to the refusal to sustain demurrers to three of them. One of said pleas set out a provision of the contract *in haec verba* whereby it was covenanted and agreed that the place for the delivery and payment of the bonds and stock should be the State Bank of Chicago, Illinois, and averred that plaintiff at no time delivered or offered to deliver to defendants, or either of them, said bonds and stock at such bank. The replication thereto averred that none of the defendants were ready or offered at such bank or elsewhere "to accept and pay for said bonds or stock or any of them," and closed with an offer to verify. Inasmuch as the declaration averred complete performance on plaintiff's part, said plea set forth a proper defense, and by replying thereto, plaintiff so admitted (*Home Ins. Co. of New York v. Favorite,* 46 Ill. 263); but the replication was no answer thereto, evading, as it did, the issue of tender so presented. To put defendants in default, plaintiff was bound to prove not only notice of his election and ability and readiness to perform, but performance as alleged in his declaration. This involved tender of the bonds and stock aforesaid, unless tender thereof was waived; but waiver, if relied on, was not pleaded as it might have been, either in the declaration or replication, and plaintiff could not plead performance and recover

under waiver of performance. *Expanded Metal Fire-proofing Co. v. Boyce,* 233 Ill. 284; *Schillinger Bros. Co. v. Thompson-Starrett Co.,* 171 Ill. App. 319.

On this same subject an instruction complained of was given at plaintiff's instance telling the jury that he was entitled to recover if he fully performed "and was ready and willing and offered to perform." But it ignored the necessity of tender. Other refused instructions tendered by defendants relate to this same subject and are to the effect that without tender or delivery of the bonds and stock at the bank aforesaid, no recovery could be had, and that without such a tender or offer to deliver before the beginning of the suit, plaintiff could not recover under the offer or tender made in open court. Of course, tender at the time of trial, if not also made before the suit was begun, was unavailing unless before trial plaintiff was excused therefrom. But, in view of the state of the pleadings based on plaintiff's complete performance and not on defendants' waiver, there was error both in giving plaintiff's instruction and denying defendants' instructions.

Plaintiff's contention that the deposit of the bonds with said bank at defendants' request put tender thereof out of his power, except through said receipt, and estopped defendants from raising the question, is not well founded. The purpose of their deposit, namely, for reorganization, had ceased, and after notice of its abandonment there was apparently nothing to prevent their delivery to plaintiff on his presentation of said receipt and demand therefor.

Plaintiff was required, therefore, even on the issues presented, to prove performance. The record does not show an actual tender of the bonds and stock to any of the defendants, or plaintiff's readiness and ability to perform by having them at the place named in the contract for their delivery. The only proof

thereon consists of the letters and conversations above referred to, relating to the request made to take back the bonds. The letter addressed to Hamilton, after reciting the covenants of the contract and stating that the property had been foreclosed, and that Shultz had paid $2,500 (half that sum in fact) to enable his bonds to participate in the benefit of the same, makes demand for payment to Shultz in the following language:

"He now calls upon you, as the most favorable to you, to take these bonds off his hands at the stipulated figure of $23,500, which is 95 cents on the dollar, together with all accrued and unpaid interest thereon and the additional sum of $2,500 paid in on the bonds at the foreclosure. He is ready to deliver to you the bonds and stock at any time.

If this is not done, he will find it necessary to bring an action against you and the other contracting parties."

The letters to Moore and Young, inclosing a copy thereof, merely stated that a copy of a letter to Hamilton was inclosed "which explains itself." It was after sending them that Shultz personally repeated the demand to Moore and Hamilton by telephone and sought, but failed, to reach Young. Even if sending to Young a copy of a letter making a demand on Hamilton and stating that it explained itself could be deemed a demand on him for performance, yet the statement therein that Shultz was ready to deliver the bonds and stock at any time was not of itself enough to prove performance by plaintiff or to put defendants in default. *Osgood v. Skinner,* 211 Ill. 229; *Lester v. Jewett,* 11 N. Y. 453; *Plumb v. Taylor,* 27 Ill. App. 238; *Kelley v. Upton,* 5 Duer (N. Y.) 336. Had they, acting thereon, gone to the place designated in the contract for their delivery, they would not have found them there. They were not compelled to seek plaintiff or to go to any other place. In addition to his offer of performance he was bound to have them there for

delivery, and make proof thereof unless the requirement was waived and pleaded.

A similar contract was under consideration in the *Osgood* case, *supra,* and while it did not designate a place of delivery, as in the case at bar, the stock was nevertheless duly transferred and sent for delivery to a specified place of which due notice was given, and it was the coupling of such action with the offer to perform that put defendant in default and not the latter alone, the Court saying that the defendant could not be put into default by merely proving readiness and willingness to transfer the stock.

Some of defendants' refused instructions raise the question whether the privilege given in the contract to plaintiff to repurchase the bonds after the lapse of two years made it an option contract in contravention of section 130 of the Criminal Code (J. & A. ¶ 3733), as it then existed. Such a contract is regarded as one of conditional sale and not an option contract within the meaning of the statute. *Osgood v. Skinner, supra; Wolf v. National Bank of Illinois,* 178 Ill. 85; *Schlee v. Guckenheimer,* 179 Ill. 593; *Ubben v. Binnian,* 182 Ill. 508; *Loeb v. Stern,* 198 Ill. 371; *Kantzler v. Bensinger,* 214 Ill. 589; *Bates v. Woods,* 225 Ill. 126. As is said in the *Bates* case, *supra*: "The principal subject-matter of the contract was a legitimate business transaction and the option contained in the contract was but incidental to the main transaction."

By another refused instruction, the jury were told, in effect, that the plaintiff could not recover if said committee purchased for the plaintiff and other bondholders the property at foreclosure sale and he contributed money for that purpose; and another of the same purport required plaintiff to prove defendants' consent to such contribution. Both were properly refused. Nothing is disclosed in the record by which defendants would be relieved from their joint and several obligations under the contract in question

because plaintiff participated in the foreclosure sale; and, if defendants' consent were requisite, it might be implied from the fact that they were parties to the agreement to bid in the property and invited plaintiff to participate with them in such purchase.

Another refused instruction told the jury, in effect, that if in the decree of foreclosure the court found the amount due on the bonds in question, then they were merged in said decree, and by law were cancelled, of no validity and not capable of delivery after entry of said decree. The instruction was properly refused and the authorities cited in support of it are not applicable to the record in this case. Portions of the decree, introduced in evidence, show that the court found what was due on the outstanding bonds, and ordered, adjudged and decreed that the trustee recover judgment therefor against the company. But it further ordered that in case the proceeds of the sale were insufficient to pay in full the amount therein found to be due, the trustee or any of the holders of the bonds might make application for a deficiency judgment. This was not a final decree or judgment for money enforceable by execution. *Cotes v. Bennett,* 183 Ill. 82; *Eggleston v. Morrison,* 185 Ill. 577. It is only by virtue of a statute that a money decree in a foreclosure proceeding can be rendered (8 Amer. & Eng. Encyc. of Law, 284), and the judgment contemplated is for the balance found to be due after sale. Jones on Mortgages, sec. 1709a. The record before us does not show the entry of a judgment for deficiency and, therefore, no basis for the contention that there was a merger of the bonds in the decree.

But for the errors stated the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE GRIDLEY, not being a member of this branch of the court when the case was orally argued, took no part in this decision.