Robert C. Daugherty, Appellant, v. Alliance Casualty Company, Appellee.

Gen. No. 8,733.

Opinion filed April 11, 1933. Rehearing denied June 20, 1933.

REARICK & REARICK and MEEKS & LOWENSTEIN, for appellant.

ACTON, ACTON & BALDWIN, for appellee; W. M. ACTON, of counsel.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an action in assumpsit, brought by Robert C. Daugherty, appellant, against the Alliance Casualty Company, a corporation, appellee. The purport of the policy is that it contracts to pay to the assured certain losses suffered by appellant in the operation of his taxicab business, by accident, collisions, etc., and for any losses suffered by appellant on account of injuries to his passengers.

The declaration then alleges that on November 6, 1930, at 9:30 a. m., while the policy was in force, one M. P. Burton, a passenger for hire in one of the plaintiff's taxis covered by the policy, sustained by accident bodily injuries by the overturning of the vehicle.

The plaintiff gave immediate notice; defendant denied liability; suit was brought; defendant after notice refused to defend; plaintiff defended; there was a judgment for $3,500 which plaintiff later compromised for $1,750; the court costs were $33.92 and attorneys' fees were $200, all of which the plaintiff paid.

The cause of action is averred to be a breach of defendant's promise to pay these items, and plaintiff avers full performance on his part, and negatives the matters forbidden.

The declaration then sets forth that there was an attempted cancellation of the policy at 10 o'clock a. m. of the same day, after the accident in question had occurred, and that this occurred by a mutual mistake on the part of both parties to the contract, and without any notice of the accident or injury, which purported cancellation is averred to be null and void.

To this declaration appellee filed a special plea, as follows: "1. That the plaintiff ought not to have his aforesaid action against it, the defendant, because it says, that on, to-wit: November 6, 1930, at about 9 o'clock a. m., that defendant, Alliance Casualty Company through its agent A. G. Gouthiere, notified the plaintiff that the defendant desired to cancel its said

policy with him, and the said A. G. Gouthiere then and there notified the plaintiff that he thought he could get another company to take the risk and asked the plaintiff if it was satisfactory to do so, and the plaintiff then and there consented that the said A. G. Gouthiere see if he could get another company to take the risk.

"2. That said A. G. Gouthiere interviewed the agent of the United States Fidelity & Guaranty Company, and the two agents and the plaintiff thereupon had a conversation, and that it was thereupon mutually agreed that the defendant's policy should be cancelled as of 12:01 a. m. of that day, and that the United States Fidelity & Guaranty Company would issue its policy of the same hour, and that the said United States Fidelity & Guaranty Company would issue its policy in substitution of and in lieu of the policy then held by the plaintiff of this defendant, and that the said policy of the said United States Fidelity & Guaranty Company should be effective as of the same date as the cancellation of the policy of the defendant, that is to say: 12:01 a. m. of November 6, 1930, and that in consideration of the cancellation of the policy of this defendant as of the hour and date aforesaid, and of the putting into effect of the policy of the United States Fidelity & Guaranty Company, as of the same hour and date, that this defendant would refund to the plaintiff the prepaid premium on said policy from the hour and day of said cancellation, and that the said plaintiff would pay to the United States Fidelity & Guaranty Company, the premium for its policy from the said hour and date, that is, to-wit: 12:01 A. M. of November 6, 1930.

"3. And the defendant further avers that in pursuance of said mutual agreement by and between the parties as aforesaid, and for the considerations aforesaid, the said United States Fidelity & Guaranty Company did receive the usual premium from the plaintiff, '

and issued to him its policy of insurance covering the same risk as the policy of this defendant that was cancelled, effective as of date 12:01 A. M. on November 6, 1930, and said policy was delivered to and accepted by the plaintiff in lieu of the policy of this defendant, and the plaintiff paid said premium to the said United States Fidelity & Guaranty Company, and thereupon and concurrently therewith this defendant did pay to and refund to the plaintiff the prepaid premium on the policy of insurance set forth in the declaration as of date of cancellation, to-wit: 12:01 A. M. on November 6, 1930.

"4. Thereupon the plaintiff claimed to this defendant that he had lost or misplaced the policy of insurance sued on in this case, and thereupon plaintiff executed and delivered in writing to this defendant, a statement and release in words and figures, as follows:

" 'Lost Policy Or Renewal Certificate

" 'Alliance Casualty Company

" 'Policy CA–3006

" 'INSURED R. C. Daugherty d/b/a Yellow & Checker Cab Co.

Effective date of policy December 17, 1929.

Effective date of cancellation November 6, 1930, at 12:01 A. M.

I hereby certify that the above described automobile policy has been lost and in consideration of the refund or remission of the return premium thereon, which is hereby acknowledged, I hereby release the Company from all liability under the provisions of said policy which is hereby cancelled.

Date November 6, 1930.

" 'R. C. DAUGHERTY,

" 'Yellow & Checker Cab Co.'

"5. And the defendant further avers that all of said negotiations and said substitution of said policy as aforesaid, between said parties as aforesaid took place in good faith and without any knowledge said

accident, set forth in the declaration, had happened, if in fact it did happen, prior to the substitution of said policy as aforesaid.

"6. And the defendant further avers that upon the plaintiff learning of said accident mentioned in said declaration, that the plaintiff gave notice to the United States Fidelity & Guaranty Company under its said policy aforesaid, that said accident happened, and notified it to defend said suit, and that the said United States Fidelity & Guaranty Company did employ Rearick & Meeks, as attorneys to defend said suit, and pay said attorneys for their said services, and said attorneys filed a plea in said suit and defended the same as attorneys for the United States Fidelity & Guaranty Company, and after said judgment mentioned in the declaration was rendered, said United States Fidelity & Guaranty Company did compromise said judgment and paid in compromise thereof the said sum of Seventeen Hundred Fifty Dollars ($1750.00) and Thirty-three and 92/100 Dollars ($33.92) costs mentioned in the declaration to the said Milton P. Burton, or his attorneys, and the said Robert C. Daugherty did not pay said attorneys for their services in said matter, and did not pay said amount in compromise of said judgment, but that payment of same was made by the check or voucher of the said United States Fidelity & Guaranty Company.

"7. The defendant further avers that the said substituted policy of the United States Fidelity & Guaranty Company, at all times and in all respects covered the same liability and indemnified the plaintiff against, etc., loss for which he was covered by the policy of this defendant, that was released and surrendered at the time of said substitution of said policy.

"WHEREFORE, the defendant avers that it is fully released from all liability in the premises, and that the plaintiff is barred from recovering from the defendant,

for or by reason of any of the matters and things in the declaration alleged, and this the defendant is ready to verify."

Appellee was given leave to file several replications to this special plea and the following are the replications:

First replication is a traverse of the allegation that there was agreement that the Alliance policy should be canceled back to 12:01 a. m. of that day, and avers that the agreement was this was to be done as of 10:00 o'clock a. m. and that neither party to the arrangement was aware that the accident had already occurred.

Second replication avers that the time of making the alleged agreement was 10:00 o'clock a. m. and that the time of the accident was 8:30 a. m.; that at the time of making the agreement all parties were ignorant of the accident, and that there was no agreement that any liability already accrued should be released.

Third replication avers that the time of the accident was 8:30 a. m., that the time of the agreement was 10:00 a. m., that the fact of the accident was unknown, and that there was no consideration for any agreement to release any liability already accrued.

Fourth replication sets forth that none of the matters alleged in the plea occurred prior to the happening of the accident mentioned in the plea, and were made in ignorance of the fact that it had happened, and without notice that any liability had accrued under the defendant's policy.

Appellee's demurrer to these replications was both general and special, and the grounds assigned are that the replications do not put in issue all the material allegations of the plea and that they attempt to join on an immaterial issue.

When the demurrer was argued, appellant asked to have it carried back to the plea, which the court de-

nied, and also sustained the demurrer to the replications.

Appellant elected to stand by his pleadings. Appellee moved for judgment on its special plea, which the court allowed, and judgment went against appellant for costs and in bar of the action.

An appeal was prayed and perfected in accordance with the court's order and the cause is now here for review.

The first question in this case is whether the court erred in refusing to let appellant carry the demurrer back to appellee's plea. Was the plea a good plea, in that the bond of the United States Fidelity and Guaranty Company had a retroactive effect and covered a loss that had already occurred?

It was held in *John v. Worthen,* 188 Ill. App. 406, 411: ''Another rule to be observed in the construction of instruments of this character is that the bond will not be retroactive in effect, and does not cover past delinquencies, unless it in terms says that it is to have such effect, so that before an obligation of this character shall be construed as being retroactive it is not sufficient that the language implies a liability but the language must be such as to expressly include such liability in its terms. It is said in the case of *Bartlett v. Wheeler,* 195 Ill. 451: 'As a general rule, ''sureties are only liable for the defaults of their principal during the term, for which their bond was given, and after it was given, unless it is retrospective in terms.'' (2 Sutherland on Damages,—2d Ed.—sec. 480, and cases referred to in note 1.) It is said in Brandt on Suretyship and Guaranty (2d Ed., vol. 2, sec. 526): ''as a general rule, the bond of a public officer has no retroactive effect, and does not cover past delinquencies, unless it in terms says that it is to have such effect.'' '
See, also, *Drake v. Sherman,* 179 Ill. 362.''

The same rule was laid down in *Maryland Casualty Co. v. First Nat. Bank,* 246 Fed. 892 (certiorari denied, 246 U. S. 670, 62 L. Ed. 931).

In *Shakman v. United States Credit System Co.,* 92 Wis. 366, 32 L. R. A. 383, it was held:

''Another question now arises upon the construction to be given to the Langsdorf indorsement. It will be noticed that the policy, though dated October 23, 1889, in terms covers the period of one year commencing on the 1st of July, 1889, and that it insures against losses accruing for merchandise sold and delivered during that period. Thus, the contract covers several months' business transactions previous to its date. It appears in evidence that a considerable number of the losses for which the plaintiff has recovered judgment were suffered between July 1, 1889, and the delivery of the contract, and that these losses arose from credits given to parties who had no credit rating in Dun's reports, but did have such rating in Bradstreet's reports. It is now contended that the Langsdorf indorsement is purely prospective in its operation, and only insures losses occurring after November 8; so that, for the losses occurring before that date, covered by Bradstreet's reports only, there can be no recovery. The indorsement reads: 'Should any party to whom above-named firm *may sell goods* not be rated, within the system of this company, at Dun's Mercantile Agency,' etc. The argument cannot prevail. This indorsement is part of the whole contract. It must be read in connection with all the other provisions of the contract, and as though it were incorporated in the contract at the proper place. So read, there can be no doubt that the contract refers to all goods sold and credits given between July, 1889, and July, 1890, and that the right to use the Bradstreet ratings in the proper cases was intended to be as broad in its terms as to time as the right to use the Dun ratings.'' (*Commonwealth v.*

*Fidelity Co.,* 224 Pa. 95, 73 Atl. 327; 25 C. J. sec. 6, p. 1095; and 31 C. J. sec. 25, p. 431.)

It has been held that where an insurance agent, upon receiving instructions to cancel, substitutes a policy in place of the one ordered canceled, and such act is ratified by insured by accepting the new policy, he is thereby precluded from recovering on the old policy, even though it had not, at the time of the loss, been formally canceled. (6 Couch Cyc. of Ins. Law, sec. 1433; *Finley v. New Brunswick Fire Ins. Co.,* 193 Fed. 195; *Finley v. Western Ins. Co.,* 69 Wash. 673, 125 Pac. 1012; *White v. Insurance Co.,* 93 Fed. 161, 103 Fed. 260; *Larsen v. Thuringia American Ins. Co.,* 208 Ill. 166.)

We are constrained to hold, in view of these authorities, that the plea was good and that the court did not err in not allowing appellant to carry the demurrer back to appellee's plea. The vice of appellant's replications is that neither of them traverses the allegations of the plea, charging that the United States Fidelity and Guaranty Company received notice from appellant to appear and defend said suit, and that said company did appear and defend said suit on behalf of appellant and that appellant suffered no losses or injuries by reason of the premises of any kind whatever.

In this case the contract is one of indemnity against loss and not indemnity against liability, and in such cases there can be no recovery without proof of an actual loss. (31 C. J., sec. 35, p. 439; 5 Couch Cyc. of Insurance Law, sec. 1165, p. 4085; *Kinnan v. Hurst Co.,* 317 Ill. 251, and *Little Cahaba Coal Co. v. Aetna Ins. Co.,* 192 Ala. 42, 68 So. 317.)

It was held in *Kinnan v. Hurst Co., supra,* at page 255:

"The agreement in paragraph I of the policy, 'to indemnify the assured against loss from the liability imposed by law upon the assured for damages on account of bodily injuries,' etc., together with the con-

dition contained in subdivision I of paragraph IV of the policy, that 'no action for the indemnity against loss provided for in insuring agreement I of this policy shall lie against the company, except for reimbursement of the amount of loss actually sustained and paid in money by the assured in full satisfaction of a judgment duly recovered against the assured after trial of the issue,' etc., clearly provides only for the reimbursement of money actually paid in satisfaction of a judgment recovered against the assured after the trial of the issue in an action for bodily injuries alleged to have been accidentally suffered within the terms of the policy,'' citing numerous authorities.

The replications did not traverse or answer the entire plea. In order for a replication to be good it must answer the whole of the plea. No replication is sufficient that does not put in issue everything that is material in the plea to which it applies and if it is bad in part it must be rejected. (18 Encyc. of Pleading & Practice, 654; 1 Chitty on Pleading, 643; 49 C. J. sec. 409, p. 334; *Schultz v. Miller-Hamilton,* 189 Ill. App. 396; *Cummings v. Smith,* 114 Ill. App. 35.)

A plaintiff by failing to demur and by filing a replication to a special plea, admits the plea to be good in law and raises an issue on the facts alleged, and thereby admits that the facts set forth in the plea make a defense at law. *Bell v. McDonald,* 219 Ill. App. 593.

The court did not err in sustaining appellee's demurrer to the replications of appellant, and the judgment of the circuit court of Vermilion county is affirmed.

*Affirmed.*