Illinois Tunnel Co. v. Gen. Acc. F. & L. Ins. Co., 219 Ill. App. 251.

# Illinois Tunnel Company for use of William Farrell, Appellee, v. General Accident Fire and Life Insurance Company, Appellant.

## Gen. No. 25,220.

1. INSURANCE, § 546*—*what is effect of limitation period in insurance policy.* A clause in an employer's indemnity insurance policy, providing that no action on the policy shall lie unless it be brought within 60 days from final judgment against the assured, is valid and enforceable.

2. INSURANCE, § 547*—*how limitation period in employer's liability policy is construed.* A clause in an employer's indemnity policy limiting the time within which action on the policy might be brought was construed to mean that where an action by a claimant was pending against the assured at the expiration of the period within which such an action might be brought, as a result of which the assured actually sustained a loss by reason of a judgment being entered against it, said judgment must be satisfied by the assured, and the action by the assured against the insurer, seeking indemnity for such loss, must be brought within 60 days after final judgment had been rendered in the action against the assured.

3. INDEMNITY, § 8*—*how contract of indemnity is construed.* Employers' indemnity insurance policies being contracts of indemnity are construed and treated as contracts under which the assured can have no claim against the insurance company unless and until the assured has paid and satisfied the judgment recovered by the claimant, although the insurance company has conducted the defense of the action brought by the claimant against the assured, in accordance with the terms of the policy.

4. INDEMNITY, § 11*—*when actual loss is necessary to recover on insurance policy.* The provision in a policy of employer's indemnity insurance, that no action shall lie against the insurance company unless the assured has "actually sustained and paid" a loss is not satisfied where there has been no bona fide payment, the assured being insolvent, and the payment being fictitious, and the result of collusion between the assured and another.

5. INSURANCE, § 85*—*what is relation between insured and insurer.* The relation between an assured and insurance company is throughout a contractual relation and never becomes a fiduciary

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

one even when the insurance company assumes to defend the action brought against the assured by the claimant.

6.  INSURANCE, § 550*—*when limitation period in policy is not waived.* Under a contract of indemnity containing a limitation provision to the effect that no action would lie under the policy unless it should be brought by the insured to reimburse it for loss actually sustained in satisfaction of a judgment, there was no waiver of such provision by the fact that the insurance company defended an action brought by the claimant against the insured.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919; Reversed. Opinion filed October 6, 1920. *Certiorari* denied by Supreme Court (making opinion final).

JOHN A. BLOOMINGSTON, for appellant.

HARRY S. MECARTNEY, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendant insurance company seeks to reverse a judgment recovered against it by the plaintiff in the sum of $9,800 in a trial by the court without a jury.

The claim sued upon arose from the following facts: The plaintiff was covered by a policy of insurance issued by the defendant, in and by which the defendant agreed to indemnify the plaintiff against loss from liability for damages on account of injuries suffered by any of its employees. This was an annual policy which expired August 30, 1908. The defendant issued a similar policy to the plaintiff, covering the year ending August 30, 1909. Within the period covered by the first policy, an accident occurred to one Farrell, an employee of the plaintiff, which was of the kind covered by the terms of the policy. Within the period covered by the second policy, an accident occurred to one Gildea, another employee of the plaintiff, which

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

was also covered by the terms of the policy. Due notice was given the defendant of these accidents and the defendant took charge of the cases and investigated them. In due time suits were begun by these two employees against the plaintiff here, in which they sought to recover for the damages they claimed to have suffered as a result of the accidents referred to. The defendant insurance company conducted the defense of both cases. Farrell obtained a judgment for $20,000 against the Illinois Tunnel Company and Gildea obtained a judgment for $3,000. Both cases were appealed to this court where the judgments were affirmed. Petitions for writs of certiorari were filed in the Supreme Court in each case and both were denied. The petition in the *Farrell* case was denied April 18, 1913, and the petition in the *Gildea* case was denied June 16, 1914. Executions were taken out in both cases and returned *nulla bona*.

After these cases had been begun against the Illinois Tunnel Company, the latter went into the hands of a receiver, upon the filing of a bill to foreclose a trust deed on its property securing its bonds in the sum of $30,000,000. Decree was duly entered in the foreclosure suit and at the master's sale, on April 5, 1912, the property of the Illinois Tunnel Company was bought in for $5,000,000 by a committee representing the bondholders.

The judgments at law were not paid by the Illinois Tunnel Company. It ceased to do business and all its property and assets were sold under the foreclosure proceedings referred to.

The Illinois Tunnel Company was an operating company. After its organization, a holding company called the Chicago Subway Company had been organized, to hold the securities of the Tunnel Company and other affiliated companies. After the foreclosure of the property of the Illinois Tunnel Company, that of

the Subway Company was also foreclosed. After the purchase of the property of the Illinois Tunnel Company by the bondholders' committee, a new operating company, called the Chicago Tunnel Company, was organized, to which the assets and property of the Illinois Tunnel Company were transferred by the committee and thereafter a new holding company, called the Chicago Utilities Company, was organized, which acquired the stock of the Chicago Tunnel Company and certain other companies.

One of the assets of the Illinois Tunnel Company, purchased by the bondholders' committee and turned over to the Chicago Tunnel Company, was the franchise known as the Automatic telephone franchise. In 1916 the Chicago Utilities Company made a contract to sell this franchise to the American Telegraph and Telephone Company. The attorneys for Farrell and Gildea had filed an intervening petition in the foreclosure proceedings against the Illinois Tunnel Company, seeking to subject the assets of the company to the payment of their judgments, but they were not successful. The Illinois Tunnel Company had obligations in excess of $40,000,000 in addition to the $5,000,-000 for which their property was sold at the master's sale in the foreclosure proceedings, all of which obligations came in ahead of these damage claim judgments.

In April, 1916, the Farrell and Gildea judgments were settled and satisfied in the following manner: The parties in interest in the Chicago Utilities Company feared that the American Telegraph and Telephone Company, which was buying the Automatic telephone franchise, might consider the judgments a cloud on the title of the Chicago Tunnel Company, which then held the franchise, and counsel for the Utilities Company were of the opinion that the safest thing to do was to get the judgments out of the way. Accordingly, counsel for the Utilities Company proposed to counsel for the judgment creditors that the

company would pay them $10,000 and turn over the two policies of insurance in satisfaction of their judgments. Each of the policies in question contained certain special agreements, clause 7 of which read as follows:

"No action shall lie against the corporation (insurance company) as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within 60 days from the date of such judgment and after trial of the issue.

"No such action shall lie unless brought within the period within which a claimant might sue the assured for damages unless at the experity of such period there is such an action pending against the assured; in which case an action may be brought against the corporation by the assured within 60 days after final judgment has been rendered and satisfied as above."

In reply to the proposition made by the Utilities Company, through its counsel, to counsel for the judgment creditors, the latter stated that Gildea would accept payment of his judgment in full and Farrell would accept the cash offered together with an assignment of the policies, which he regarded as a valuable asset, on condition that the payments be made by the Illinois Tunnel Company out of its own funds, pointing out that "recovery cannot be had upon these policies, unless the Illinois Tunnel Company sustains an *actual loss,* in making the payments on the judgments, and in order to sustain such loss, it is necessary that the Illinois Tunnel Company should make these payments *out of its own funds.*" To meet the conditions imposed on the settlement by counsel for the judgment creditors, Mr. Tracy, the president of the Illinois Tunnel Company, and also of the Chicago Tunnel Company and the Chicago Utilities Company, testified that it was agreed that the Utilities Company, as holder of the mortgage of the Illinois Tunnel Company,

should advance the $10,000 "for the protection of its interests and title." At this time the Illinois Tunnel Company was maintaining its corporate existence but it had ceased to do business and had no assets of any kind nor any bank account. The Utilities Company was not indebted to the Illinois Tunnel Company in any way. There was no action of the Board of Directors of the Utilities Company authorizing this settlement but after the settlement was concluded the board passed a resolution approving and confirming it, which resolution recited that it was "to the best interests of this company, as holder of the mortgage on Chicago Tunnel Company's property' that settlement should be made," wherefore the settlement was ratified, approved and confirmed. Counsel for the Utilities Company wrote the Illinois Tunnel Company saying that the judgment creditors were prosecuting a suit against the Chicago Tunnel Company and others, upon their judgments against the Illinois Tunnel Company, to compel the Chicago Tunnel Company to pay the judgments and to reach the assets in the hands of the Chicago Tunnel Company, which they claimed were derived by it indirectly from the Illinois Tunnel Company. He said in this letter that his clients (bondholders of the Chicago Utilities Company) "are thus indirectly interested in having you obtain satisfaction of the judgments against you, and for this reason and others, they have decided to let you have $10,000, the amount necessary to enable you to carry out the proposed contracts (of settlement), and I accordingly herewith enclose you our check, payable to your order, for that sum. I see no objections to fully complying in good faith with Mr. McShane's (counsel for the judgment creditors) requirement that the judgments should be paid out of your own funds, and hence, while my clients of course expect and rely upon you to use the money for the purpose indicated, yet, in order that there may be no misunderstanding,

they turn the money over to you absolutely and unconditionally, to use for any purpose you may see fit." The Chicago Utilities Company had given its check to Mr. Shaw, its counsel, and he banked it and sent the check of his firm to the Illinois Tunnel Company in his letter above referred to. At this time the Board of Directors of the Illinois Tunnel Company met and passed a resolution reciting the proposition of Mr. McShane, representing the judgment creditors, for the settlement of the judgments and that certain bondholders of the Chicago Utilities Company "have offered to let the Illinois Tunnel Company have the sum of $10,000 to enable it to make said settlements, * * * and have offered to turn over said sum of money to the Illinois Tunnel Company 'absolutely and unconditionally to use for any purpose it sees fit,'" and said resolution provided that "the Illinois Tunnel Company hereby accepts said offer of said sum of money, as so offered, namely, absolutely and unconditionally, and as its own money," and then the resolution proceeded to appoint Mr. Tracy, then vice president of the Illinois Tunnel Company, as its agent and attorney in the premises, and directed him to accept said money as so offered and "to make and carry out said settlements and contracts with said Farrell and said Gildea," and to use "said sum of $10,000 for that purpose." The Chicago Utilities Company, the Chicago Tunnel Company and the Illinois Tunnel Company had certain of their offices filled by the same individuals, which insured the carrying out of the wishes of the Chicago Utilities Company by the Illinois Tunnel Company with reference to the use to be made of this money by the latter company. The check for $10,000 was delivered by Mr. Payton, secretary of the Chicago Utilities Company, to its counsel. When the check was received by the Illinois Tunnel Company from the counsel for the Chicago Utilities Company, as it had no bank account, the same Mr.

Payton, its secretary, went to the bank and used the $10,000 in purchasing two cashier's checks, both payable to Mr. McShane, counsel for the judgment creditors, one check being for $3,625 and the other for $6,375, and both were turned over to Mr. McShane. The former check was used to settle the Gildea claim, and his judgment was satisfied in full. Farrell entered into a contract with the Illinois Tunnel Company in which the company agreed to pay him $6,375 at the time of the execution of the contract, in part payment and satisfaction of his judgment, and in payment of the balance the company agreed to use its best endeavors to collect from the defendant insurance company the money due or which might become due to the Tunnel Company under the two policies which it held, and to promptly pay all of the money so collected to Farrell. The Tunnel Company further agreed to prosecute such suits as might prove necessary to enforce collection under the policies and to assign all its right, title and interest under said policies to Farrell. In consideration of these obligations on the part of the Tunnel Company, Farrell satisfied his judgment in full and he further released and discharged (as did Gildea also) not only the Illinois Tunnel Company, but also the Chicago Tunnel Company, the Chicago Subway Company, the Chicago Utilities Company and the Illinois Telephone Construction Company. No note or other evidence of indebtedness was given to the Utilities Company by the Tunnel Company, by reason of this $10,000 transaction, nor was any promise made to return it and it has never been returned so far as the record shows. This action was brought pursuant to the provisions of the contract between Farrell and the Illinois Tunnel Company.

In urging that the judgment be reversed, the defendant first contends that no suit was brought within 60 days from final judgment as required by paragraph 7 above quoted. That paragraph was a valid and en-

forceable clause. *Stephens v. Phœnix Assurance Co.*, 85 Ill. App. 671; *Ronan v. Michigan Mut. Life Ins. Co.*, 96 Ill. App. 355; *Hansell-Elcock Co. v. Frankfort Marine Accident & Plate Glass Ins. Co.*, 177 Ill. App. 500. Of course its provisions must be strictly construed in favor of the assured. The plaintiff contends that the second provision of the paragraph is ambiguous and it should be construed to mean that action against the insurance company is not barred until 60 days from the satisfaction of the judgment. It is the second provision of the paragraph that applies to this case for this action was not brought ''within the period within which a claimant might sue the assured for damages,'' but at the expiration of that period there was ''such an action pending against the assured.'' In such case, the provision of the policy in question says ''an action may be brought against the corporation (insurance company) by the assured within 60 days after final judgment has been rendered *and satisfied as above.*'' The alleged ambiguity involves the meaning to be given to the last words of the provision. In our opinion their meaning is entirely clear. There is ''above,'' in the same paragraph, a provision as to the satisfaction of a judgment, which says that no action shall lie against the insurance company ''unless it shall be brought by the assured himself to reimburse him for loss actually sustained *and paid by him in satisfaction of a judgment within 60 days from the date of such judgment* and after trial of the issue.'' In the light of that provision as to satisfaction of a judgment *''as above''* set forth in the same paragraph, the latter provision of the paragraph must be held to mean that where an action by a claimant is pending against the assured, at the expiration of the period within which such an action might be brought, as a result of which the assured actually sustains a loss by reason of a judgment being entered against it, said

judgment must be satisfied by the assured and the action by the assured against the insurance company, seeking indemnity for such loss, must be brought,—both within 60 days after final judgment has been rendered in the action against the assured.

In the case at bar this was not done. The judgments obtained by the claimants against the assured stood for over 2 years without any move on the part of the assured to satisfy them. The assured was hopelessly insolvent and ceased entirely the transaction of business and all its property and assets were sold under foreclosure. For the assured itself to have satisfied these judgments was, of course, a physical impossibility.

But the plaintiff contends that the act of the defendant in taking charge of the defense of the assured in the injury suits brought against it by the claimants had the effect of a waiver of the provision of the policy as to the 60-day limitation. In support of this contention, counsel for plaintiff has presented an elaborate argument, with which we are not able to agree. In this connection our attention has been called to *Sanders v. Frankfort Marine Accident & Plate Glass Ins. Co.*, 72 N. H. 485; *Davies v. Maryland Casualty Co.*, 89 Wash. 571; *Elliott v. Aetna Life Ins. Co.*, 100 Neb. 833; *Patterson v. Adan*, 119 Minn. 308; *Standard Printing Co. v. Fidelity & Deposit Co. of Maryland*, 138 Minn. 304; *Maryland Casualty Co. v. Peppard*, 53 Okla. 515, and other cases. Some of these cases involve liability policies and so are not in point. But most of them involve indemnity policies such as the one on which the case at bar was brought, and these support the plaintiff's contention. Notwithstanding the great respect we have for the courts rendering these decisions, we are of the opinion that they are not based on sound reasoning nor are they in accord with the great weight of authority.

Insurance contracts similar to the one involved here,

CHICAGO—FIRST DISTRICT—OCTOBER, 1920.    261

Illinois Tunnel Co. v. Gen. Acc. F. & L. Ins. Co., 219 Ill. App. 251.

being contracts of indemnity, have been repeat ·dly construed and treated as contracts under whicl· the assured could have· no claim against the insurance company unless and until it had paid and satisfied the judgment recovered by the claimant, although 1he insurance company had conducted the defense of the action brought by the claimant against the assured, in acc( rdance with the terms of the policy. In *United States Fidelity & Guaranty Co. v. Maryland Casualty Co.*, 182 Ill. App. 438, the court constru.ed a policy containing a clause similar to the one involved here, as "a contract of indemnity as distinguished from a contract which insures directly against liability," although there, as here, the insurance company had defended the case brought against the assured. In the case cited, however, the court held that the defendant was estopped to claim exemption from liability upon the ground that no loss had accrued to the assured because the judgment had not in fact been paid and satisfied, because it had assured the plaintiff guaranty company which had become surety on the appeal bond filed in connection with the appeal from the judgment recovered by the claimant against the assured, that it was "carrying the liability" of the assured, which the court held was equivalent to saying that the defendant insurance company had, by the terms of its policy, assumed the liability of the assured, upon the strength of which representation the guaranty company had become surety upon the bond.

In a number of cases involving policies containing provisions similar to those present in the policy involved here, the courts have held that the policies were not contracts in which the liability of the assured was assumed by the insurance company but were contracts of indemnity only, and in these cases the assured either participated in the defense of the action brought by the claimant against the assured or conducted such defense entirely. Such was the holding in *Frye v. Bath Gas &*

*Electric Co.,* 97 Me. 241; *Davison v. Maryland Casualty Co.,* 197 Mass. 167; *Burke v. London Guarantee & Accident Co.,* 47 N. Y. Misc. 171 (in this case it does not appear the insurance company participated in the defense of the action); *Poe v. Philadelphia Casualty Co.,* 118 Md. 347; *West Riverside Coal Co. v. Maryland Casualty Co.,* 155 Iowa 161. In *Carter v. Aetna Life Ins. Co.,* 76 Kan. 275, involving a policy containing a provision similar to the one involved here, the insurance company defended the action brought by the claimant against the assured and the court held that the claimant had no right of action against the insurance company by reason of the judgment recovered against the assured, and the fact that the insurance company had defended the action brought against the assured did not estop it from denying liability to the claimant. This case expressly refers to the *Sanders* case and says it appears to be out of line with the current of authority. *O'Connell v. New York, N. H. & H. R. Co.,* 187 Mass. 272, is to the same effect.

In *Allen v. Aetna Life Ins. Co.,* 145 Fed. 881, an insurance policy was involved, containing the same provision which we find in the policy here, and the court there held that the contract was not one of liability but one of indemnity. Here also the court referred to the *Sanders* case and said: "We cannot concur in it. It seems to us not to give due effect to the language of the policy that the insurer agreed 'to indemnify' the assured 'against loss from common law or statutory liability for damages on account of bodily injuries,' or to the seventh clause that 'no action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of a judgment within 60 days from the date of such judgment and after trial of the issue.' " The court held that the undertaking of the insurance company to defend the action did not ren-

Illinois Tunnel Co. v. Gen. Acc. F. & L. Ins. Co., 219 Ill. App. 251.

der it liable for the judgment but that, its liability being only to indemnify the assured against loss, no valid claim existed against it until the judgment should be paid by the assured and that it could not therefore be held liable to the claimant in an action against the assured, as garnishee. The court further held that the insurance company was not estopped to deny its liability by the mere fact that it had defended the action.

In *Connolly v. Bolster,* 187 Mass. 266, the court expressly repudiates the *Sanders* case holding that in undertaking to defend the action under the terms of the policy the insurance company does not undertake to defend successfully, and if in spite of its defense the claimant recovers judgment against the assured, the question of whether the insurance company is bound to pay the amount of the judgment depends upon the terms of its agreement to indemnify the assured against loss.

In *Carter v. Aetna Life Ins. Co.,* 76 Kan. 275, the court held that the fact that the insurance company defended the action brought against the assured did not estop it from denying liability under its contract, saying: "The right to defend was specifically given by the contract, and this burden was assumed for the reason that the award to be made in the proceeding might ultimately be the measure of its own liability." The court held that the contract involved was one of indemnity against loss and was not insurance against liability and that until the assured had met with a loss there was no occasion to pay indemnity. Commenting upon the provision in the policy, similar to the one involved here, the court further said: "This provision leaves no doubt of the intention of the parties, which was that the insurance company was not required to pay anything, because of the policy, until losses had been paid by the assured in satisfaction of a judgment."

In *Cayard v. Robertson*, 123 Tenn. 382, the court expressly refused to follow the *Sanders* case, saying: "It is certainly opposed to the weight of authority," and followed the other line of decisions, many of which we have cited. The same course was followed in *Allen v. Gillman, McNeil & Co.*, 137 Fed. 136, where the court said that the objection to the construction of the clause of the contract of insurance in question, as adopted in the *Sanders* case, "is that it defeats a plain and unambiguous provision by what appears to be the pure assumption that the parties did not mean what they clearly said. * * * By the plain terms of the contract no action can be brought for 'any loss under this policy,' unless the insured has first paid it himself."

In *Most v. Massachusetts Bonding & Insurance Co.* (Mo.), 196 S. W. 1064, the court had occasion to determine whether the policy involved, which was similar to the one involved here, was an indemnity policy or a liability policy and if the former, whether the "no action" clause had been waived. The court there said that the great weight of authority was to the effect that the policy was one of indemnity and that no action could be maintained upon it except to indemnify the assured for money actually paid in satisfaction of a judgment against the assured, and further that the better reasoning as well as the great weight of authority was against the contention of the plaintiff on the proper construction to be given the terms of the policy and the effect of the conduct of the insurance company on the question of waiver. In commenting on the *Sanders* case and others cited by the plaintiff in the case at bar, the court held that their reasoning might have much to commend it if addressed to a State legislature but that the courts were powerless to make contracts for the parties and that the provisions of the policy were without any ambiguity requiring an application of the rule that ambiguous clauses in in-

surance policies are to be construed most strongly against the insurer.

In commenting on the *Sanders* case and other similar cases, the court said in *Goodman v. Georgia Life Ins. Co.,* 189 Ala. 130: "It seems to us that their construction of the insurance contract is dominated by an undue regard for the injured stranger rather than by a consideration alone of the intention and the obligations of the contracting parties."    The court then pointed out that the great weight of authority was contrary to the holding in that line of decisions.    In his work on Accident and Liability Insurance on page 467, Fuller cites numerous cases sustaining the contention of the defendant here and cites the *Sanders* case, *contra,* and then says: "This case has been expressly disavowed in numerous decisions." Reference might be made to many other decisions sustaining the weight of authority as above set forth but it is impossible to do so within the limits of this opinion.

The plaintiff argues that when the defendant undertook to and did defend the action brought by the claimant against the assured, it thereby entered into a fiduciary relation with the assured and that the defendant could not withdraw from that attitude and assume or resume an "arm's length" position as to the assured, at least, until the defendant had served notice on the assured to that effect and had advised it that the judgment had been affirmed and that the insurance provided for in the insurance policy would be lost unless the judgment were satisfied within the period specified in the policy and action begun against the company as provided therein; that by assuming to defend the suit the insurance company becomes bound to see that the judgment is satisfied by the assured or to itself pay the amount of the judgment to the assured and all limitation clauses barring a suit on the policy within certain prescribed limits after judgment and satisfaction are waived or at least are suspended while

the insurance company is so engaged in defending the action. This does not appeal to us as a sound argument. The relation between the assured and the insurance company is throughout a contractual relation. It never becomes a fiduciary one even when the insurance company assumes to defend the action brought against the assured by the claimant. Such action is taken by the insurance company under an express provision of the policy and its object is not the protection of the assured against loss but to save itself from any obligation to reimburse the assured for loss actually sustained in paying the judgment. No provisions of the policy are suspended when the insurance company avails itself of the privilege of defending the action and thus endeavoring to protect itself as the policy itself provides it may.

Following the weight of authority, we hold that the contract involved in the case at bar was one of indemnity and that the provisions of clause 7, herein above quoted, as to the 60-day limitation and also to the effect that no action would lie against the defendant as respects any loss under the policy, unless it should be brought by the assured to reimburse it for loss actually sustained in satisfaction of a judgment, were not waived by reason of the fact that the insurance company defended the action brought by the claimant against the assured.

It remains to determine whether the Illinois Tunnel Company, by reason of the facts involved in this case, which we have already fully recited, has "actually sustained and paid" a loss in satisfaction of a judgment. In our opinion the facts show that it has not. At the time the judgments were satisfied it was impossible for the Illinois Tunnel Company to sustain a loss for it had nothing to lose. It was entirely out of business and hopelessly insolvent. While it has been said that the insurance company cannot question where the money comes from, it has further been said that the

payment must be in good faith and that there must be in fact a loss and not merely a pretended loss as a result of some collusion between the assured and another. Even where a bankrupt assured has given its note through its receiver in payment of a judgment and the judgment has been satisfied and then the action has been brought against the insurance company by the receiver, the court has held that the transaction was a subterfuge and that there had been no bona fide payment of the judgment but merely a fictitious one which would not occasion any liability on the part of the insurance company. *Stenbom v. Brown-Corliss Engine Co.*, 137 Wis. 564.

The satisfaction of the Farrell and Gildea judgments was brought about solely by reason of the desire of the bondholders of the Chicago Utilities Company to remove any question of a cloud on the title of the Chicago Tunnel Company to the Automatic franchise. Of course, as a matter of law, that could have been readily accomplished directly between the Utilities Company, which furnished the money, and the judgment creditors. But, at the request of counsel representing the judgment creditors, and solely for the purpose of attempting to bring about a "loss actually sustained and paid" by the Illinois Tunnel Company in payment of the judgments, and thus giving rise to a liability on the part of the defendant insurance company, the parties went through the motions we have previously described. What was done not only fails to establish a "loss actually sustained and paid" by the Illinois Tunnel Company but it in fact establishes a gain acquired by that company, for it accomplished the satisfaction and wiping out of judgments on which it then owed nearly $30,000, without the loss of a penny to the Illinois Tunnel Company and solely by means of funds paid by the Utilities Company, and that only by reason of an advantage which the latter company desired to gain by the transaction. In our opinion, to

hold that such a course of events as is disclosed here could or did amount to a "loss actually sustained and paid" by the Illinois Tunnel Company would be a travesty on justice. Of course there was no privity of contract between the claimant and the insurance company. The liability of the latter rests solely upon the provisions of the contract which it has with the assured.

In *Kennedy v. Fidelity & Casualty Co.*, 100 Minn. 1, there was involved an insurance contract containing the identical clause which is involved here. In construing the limitation clause the court said: "Fairly construed, the language means simply that the judgment must be paid and satisfied within 60 days from date of its entry, and, when such judgment is paid or satisfied, the loss is actually sustained." Construing the terms of the contract as to a loss "actually sustained and paid before the company becomes liable," the court held that such loss would occur if the assured actually parted with the cash, or executed and delivered to the complainant its notes in good faith.

For the reasons stated the judgment of the circuit court is reversed.

*Reversed.*

TAYLOR, P. J., concurs.

O'CONNOR, J., dissenting.