W. Hinchcliff, Trading as Hinchcliff Motor Service for Use of Transformer Corporation of America, Appellee, v. Insurance Company of North America, Appellant.

**Gen. No. 37,101.**

*Opinion filed October 16, 1934.*

HICKS & FOLONIE, for appellant.

HAMER & CAMPBELL, for appellee; CHESTER D. KERN, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On June 9, 1933, a garnishment proceeding on a judgment was commenced in the circuit court under the statute (Cahill's St. 1931, ch. 62, ¶¶ 1–29, p. 1542) against the Insurance Company of North America (hereinafter called the Insurance Co.). In the affidavit it is alleged in substance that at the April, 1933, term of the court the Transformer Corporation of America (hereinafter called the Transformer Co.) recovered a judgment against W. Hinchcliff, doing business as Hinchcliff Motor Service (hereinafter called Hinchcliff) for the sum of $3,399.10 and $29.80 costs of suit; that an execution on the judgment has been duly issued and returned by the sheriff "no property found"; that within the knowledge of affiant Hinchcliff has no property in his possession, liable to execution; and that affiant has just reason to believe that the Insurance Co. is indebted to Hinchcliff or has effects or estate of his in its hands. On the same day a garnishee summons was issued and the usual interrogatories to be answered by the garnishee were filed, including special interrogatories, Nos. 7 and 8, as follows:

"7. Did you on or before July 19, 1929, issue a 'Motor Truck Merchandise Floater Owners' Form' of policy, No. 1-M-7737, to Hinchcliff (as Hinchcliff Motor Service) wherein you agreed to insure Hinchcliff Motor Service continuously from noon, Standard Time, July 19, 1929, against damage to general merchandise in the course of delivery to the extent of $5,000 on the contents of any one automobile truck and/or trailer, and $25,000 on any one casualty?

"8. Was the aforesaid policy of insurance in full force and effect on February 21, 1931?"

On June 17, 1933, the Insurance Co., by attorneys, entered a special appearance as garnishee, filed its verified petition, and presented a good and sufficient bond, etc., for the removal of the cause to the U. S. District Court for the northern district of Illinois, eastern division. In the petition it is alleged *inter alia* that the cause "is a suit of a civil nature"; that the matter in controversy "exceeds, exclusive of interest and costs, the sum of $3,000," is "between citizens of different states," and "is an action of which the U. S. District Courts have original jurisdiction"; that petitioner is a Pennsylvania corporation, having its principal office and place of business in the City of Philadelphia, and is a citizen of Pennsylvania; and that Hinchcliff and the Transformer Co. are each citizens of Illinois. After a hearing upon the petition, due notice thereof having been given, the court, on June 21, 1933, entered an order denying the prayer of the petition upon the sole ground that "said garnishment proceeding is not a removable cause."

On June 24, 1933, the Insurance Co. filed its answer to the eight interrogatories, and also filed its written demand for a jury trial. The answers to the first six interrogatories are to the effect that at the date of the service of the writ (June 9th), it did not have, nor has it now, any moneys, rights, credits, etc., in its hands belonging to, nor is it in any manner indebted to, said Hinchcliff, etc. Its answers to said 7th and 8th interrogatories are in substance as follows:

(a) That on July 19, 1929, it delivered the policy to Hinchcliff, whereby it insured him, under the name of Hinchcliff Motor Service, in consideration of stipulations therein named, from said date and until canceled, "against loss or damage by certain hazards in the policy mentioned, in an amount not exceeding $25,000, and limited to an amount not exceeding $5,000 on the contents of any one automobile truck and/or

trailer, and which was thereafter (by endorsement effective January 6, 1931) increased to a limit of liability of $10,000 on the contents of any one automobile truck and/or trailer, owned *or* operated by said insured''; that the policy ''was in full force and effect on February 21, 1931, but subject, however, to all its terms, conditions, limitations, etc.''; but that ''no loss or damage from any hazards insured against, or within the terms, conditions, limitations, etc., of the policy, occurred on or about February 21, 1931, or at any time.''

(b) That there is a provision of the policy that the ''purpose of the insurance is to indemnify the insured (Hinchcliff) for his liability, as a carrier, *only to the amount he is obliged to pay* and *does pay* on the merchandise described in the policy by reason of the losses caused as in the policy defined''; that by reason of this provision ''no claim for damage could accrue, or has accrued or become payable, from this garnishee to said insured''; and that ''said supposed judgment creditor (Transformer Co.) cannot maintain this action or recover against this garnishee any sum or amount, if any, which might become payable under said policy.''

(c) That there is another provision of the policy that ''as to losses occurring under it of merchandise belonging to the Transformer Co.,'' such losses ''shall be payable to the insured *and* said Transformer Co. *as their respective interests may appear''*; that the judgment mentioned in the affidavit of garnishment ''is for supposed loss of or damage to merchandise supposed to belong to said Transformer Co., and not otherwise''; that because of the last mentioned provision of the policy, ''the supposed loss, if any, did not and never will become payable to the insured''; and that, therefore, this garnishee ''is not indebted to Hinchcliff in any sum or amount, if any, which other-

wise has or may become payable under the terms of the policy by reason of said loss claimed to have occurred.''

(d) That it is also provided in the policy that any loss under it, if any, shall be immediately reported in writing, with full particulars, to the Insurance Co. at Philadelphia, Pa., or to the agent issuing the policy, and also that the failure of the insured to file a sworn proof of loss within three months of the date of loss invalidates any claim under the policy, and also that no suit or action on the policy for the recovery of any claim shall be sustainable in any court unless the insured shall have fully complied with all of the requirements of the policy; that no written report was at any time given to the garnishee, or its agent; that no sworn proof of loss was at any time filed with or furnished to the garnishee; that said conditions have not been complied with; and that, hence, no claim has ever accrued or become payable by reason of said supposed loss on February 21, 1931.

(e) That it is also provided in the policy that no suit or action upon the policy shall be sustainable in any court unless commenced within 12 months next after the happening of the loss; that the claimed loss on February 21, 1931, happened more than 12 months before the commencement of this suit on July 9, 1933; that by reason thereof no recovery of the supposed loss can be had; or any garnishment be sustained; and that Hinchcliff's claim under the policy is ''contingent and unliquidated,'' and also the question of this garnishee's liability under the policy is ''undetermined and contingent.'' And this garnishee prays that it be discharged upon its answer.

Thereafter the Transformer Co. filed a traverse to the answer, and during July, 1933, the cause came on for trial before a jury, resulting in a verdict finding the issues for plaintiff and also finding that at the

time of the service of the writ of garnishment there was due and owing from the Insurance Co. to Hinchcliff, doing business as Hinchcliff Motor Service, the sum of $3,425.90. On July 15, 1933, after the garnishee's motions for a new trial and in arrest of judgment had been overruled, judgment was entered against it in said sum in favor of Hinchcliff for the use of the Transformer Co. From the judgment the garnishee prosecutes the present appeal.

On the trial plaintiff introduced in evidence the policy and other writings. Hinchcliff testified in his own behalf, as did five witnesses for him. One witness testified for the garnishee and it introduced a letter, dated September 16, 1931, written by its attorneys and addressed to Hinchcliff, in care of his personal attorney in Chicago, and also two photographs. Some of the provisions of the policy are in substance as follows:

The Insurance Co., in consideration of the stipulations herein named and of $100, premium, does insure HINCHCLIFF MOTOR SERVICE for the continuous term from July 19, 1929, at noon, Standard Time, at place of issuance until canceled, to an amount not exceeding $25,000.

PROPERTY INSURED

1. On lawful goods and merchandise consisting of "General Merchandise" in course of delivery.

COVERAGE

2. Covering the merchandise insured only while in the custody of the Assured and actually in transit, and "only while contained in or on the following described motor truck and/or trucks owned and operated by the Assured; however, privilege is hereby granted the Assured to substitute at any time . . . other truck or trucks than described herein, provided such substituted truck or trucks are owned and operated by the Assured." . . .

### Description of Motor Trucks

(3) This policy covers on lawful goods and merchandise "held in the custody of the Assured for transportation only as warehousemen, carriers or forwarders, covering only in transit while contained in or on automobile trucks and/or trailers, *owned and/or operated* by the Assured."

(4) This Company shall not be liable for more than $5,000 on the contents of any one automobile truck and/or trailer.

(5) "It is the purpose of this insurance to *indemnify* the Assured for their liability as a carrier *only* to the amount which they are obliged to pay and *do pay* on such merchandise by reason of losses caused as herein defined."

(6) "The Assured *whenever requested* shall aid in securing information and evidence and the attendance of witnesses *and shall defend* any action at law or in equity *through such counsel as this Company may direct,* but *at this Company's expense.* The Assured shall make no settlement of any claim arising hereunder, nor incur any expense without the written consent of this Company. The Company shall have the right to settle any claim or suit at its own expense at any time."

There is a so-called "Collision Endorsement" on the policy, dated the day of its issuance (July 19, 1929), wherein the policy is extended to cover "against loss or damage directly caused by collision, i. e., accidental collision of the *vehicle* during the period insured with any other automobile, vehicle or *object.*" And under date of February 1, 1930, another indorsement was made on the policy whereby it was agreed that "on all losses occurring hereunder of merchandise" belonging to the Transformer Co., such losses "shall be payable to the Assured *and* the Transformer Co., Chicago, *as their respective interests may ap-*

*pear.''* On the face of the policy is the usual provision that ''This policy is made and accepted subject to the foregoing stipulations and conditions and to the conditions printed on the back hereof, which are hereby specially referred to and made a part of this policy.'' Among the conditions on the back are the following:

''11. The loss if any under this policy shall be immediately reported in writing with full particulars to the Insurance Company, Philadelphia, Pa., or to the agent of the company issuing this policy. Failure to file a sworn proof of loss within three months of date of loss invalidates claim.

''18. No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity unless . . . commenced within twelve (12) months next after the happening of the loss. . . .''

From plaintiff's evidence on the trial of the present garnishment suit the following facts in substance appear:

The original suit of the Transformer Co. against Hinchcliff, and in which the judgment against him for $3,399.10 was rendered, grew out of an accident on February 21, 1931, whereby certain radio sets owned by the Transformer Co. and loaded on an automobile truck were damaged. Hinchcliff, doing business as the Hinchcliff Motor Service, was engaged in cartage contracting. He agreed for a certain price to transport the radios for the Transformer Co. from Chicago to St. Louis. The truck was not owned by him but by two other men and he requested them to transport the radios, agreeing to pay them a certain percentage of the price he was to receive from the Transformer Co. While the journey was being made the top of the load (being about five feet higher than the top of the cab of the truck) collided with an overhead railroad viaduct, crossing the highway, resulting

in considerable damage to some of the radios. On the trial Hinchcliff was represented by the attorneys for the Insurance Co., and they were paid for their services by the Insurance Co. After the original suit was commenced Hinchcliff retained a Chicago attorney, named Leitzell, who thereafter had conferences relative to the suit with the attorneys for the Insurance Co. The letter of September 16, 1931, written by the attorneys of the Insurance Co. to Hinchcliff in care of Leitzell (introduced in evidence in the present suit by the Insurance Co.), reads in part as follows:

"Referring to your request to the Insurance Co. to defend in your behalf suit brought against you by the Transformer Co., . . . we beg to advise the matter has been submitted to us as attorneys for the Insurance Co.; and replying to your request, and confirming telephone conversations with your attorney, Leitzell, we have to advise that the Insurance Co. will appear and defend said suit in your behalf at the expense of the Insurance Co., *upon condition* that by so assuming the defense of said suit the Insurance Co. *does not admit any liability under its policy for the loss,* or any part thereof, . . . and that it will assume said defense only upon condition that such action on the part of the Insurance Co. *shall not be a waiver of any of the terms and conditions* of the policy or of any legal defenses which it may have under said policy."

Leitzell, a witness called by the Insurance Co., testified in substance that after the letter was received, there was a conference in his office at which he, Hinchcliff and one of the attorneys (Carlson) of the Insurance Co. were present; that as a result of the conference one of the attorneys of the Insurance Co., at its expense, represented Hinchcliff upon the trial of the original suit; and that while he (Leitzell) had further conferences with Carlson as to the preparation for the trial he did not attend the trial or take any part in it.

One of the grounds urged by counsel for the garnishee (the Insurance Co.) for a reversal of the judgment in question is in substance that the court erred in refusing to remove the garnishment cause to the U. S. District Court, that it was properly removable, and that, hence, all proceedings thereafter had in the circuit court of Cook county, including the entry of said judgment, are *coram non judice* and void. (See *National Steamship Co. v. Tugman,* 106 U. S. 118, 122; *Madisonville Traction Co. v. Saint Bernard Mining Co.,* 196 U. S. 239, 244, 245; *Western Union Telegraph Co. v. Horack,* 9 Ill. App. 309, 311.) It sufficiently appears that the petition for removal should have been granted *if* a garnishment proceeding upon a judgment is such a cause as is properly removable under the federal statute. The trial court denied the motion upon the sole ground that such a proceeding "is not a removable cause." After reviewing numerous authorities, including some decisions of the courts of review of Illinois, we are of the opinion that the court's ruling was correct and that the present cause was not a removable one. In 20 Cyc. p. 979, it is said: "Garnishment is in no sense a new suit, but is a special auxiliary remedy for more effectually reaching defendant's credits, and is always ancillary to the main action under which it is brought." In 14 Am. & Eng. Encyc. Law, 2nd Ed., p. 741, it is said: "Garnishment proceedings, whether instituted in aid of an execution for the enforcement of a judgment recovered or in the nature of or in aid of an attachment, . . . are considered a proceeding auxiliary to such main action, and not an independent proceeding. Thus it has been held that the proceeding against the garnishee was merely auxiliary to the principal action, and could not be removed to the federal court on account of the diverse citizenship of the plaintiff and the garnishee." In 23 R. C. L., p. 622, sec. 19, it is said: "A suit or

proceeding ancillary or incidental to the main suit cannot be removed.'' In *Levinson v. Home Bank & Trust Co.*, 337 Ill. 241, 243, it is said: ''It has been uniformly held by this court that the garnishment process is purely a creature of statute. (Citing *Siegel, Cooper & Co. v. Schueck,* 167 Ill. 522.)'' On the question as to whether under the Illinois statute the proceeding is auxiliary our Supreme Court said in *Freeport Motor Casualty Co. v. Madden,* 354 Ill. 486, 489: ''It is not an independent proceeding but is ancillary or auxiliary. It depends upon another proceeding in law or equity. It is entirely remedial, and is resorted to either in aid of a pending action or in aid of an execution issued on a judgment already recovered.'' In *Chanute v. Martin,* 25 Ill. 63, 65, it is said: ''This whole proceeding is in the nature of process to obtain satisfaction of a judgment.'' (See, also, *Dennison v. Taylor,* 142 Ill. 45, 56; *Hankel v. East & West Publishing Co.,* 239 Ill. App. 236, 238; *First Nat. Bank of Alexandria v. Turnbull & Co.,* 16 Wall. (U. S.) 190, 195; *Pratt v. Albright,* 9 Fed. 634, 635; *Poole v. Thatcherdeft,* 19 Fed. 49, 50; *Brucker v. Georgia Casualty Co.,* 14 F. (2d) 688, 689; *Lahman v. Indemnity Ins. Co.,* 47 F. (2d) 610.)

In urging a reversal of the judgment upon the merits, the main point relied upon by counsel for the garnishee is based upon the following provision of the policy (No. 5 as above set forth): ''It is the purpose of this insurance to indemnify the Assured for their liability as a carrier *only* to the amount which they are obliged to pay and *do pay* on such merchandise by reason of losses caused as herein defined.'' Counsel contend that neither the answer of the garnishee nor the evidence discloses that there is any debt owing from the garnishee to Hinchcliff or, by virtue of our garnishment statute, to the Transformer Co., his judgment creditor. And counsel argue in substance that the

policy does not provide for indemnity against *liability* but only for indemnity against *actual loss* which Hinchcliff as carrier is obliged to pay and *does pay,* and that, hence, he cannot recover upon the policy unless and until he has paid the loss for which indemnity is claimed, and that the Transformer Co., as a judgment creditor of Hinchcliff, has no greater rights in the proceeding. We are of the opinion that there is substantial merit in the contention and argument.

There are general rules of law that ''where the contract is strictly one of indemnity, that is, one against *loss or damages,* the indemnitee cannot recover until he has made payment, or otherwise suffered an actual loss or damage, against which the covenant runs,'' and that ''where the loss or damages indemnified involves a payment, it is not sufficient that the indemnitee is under a *liability* to pay, to entitle him to recover, but he must make an *actual payment* of the loss or damage.'' (31 Corpus Juris, pp. 439, 440, sec. 35.) These rules have been applied in contracts of insurance. Provisions in policies similar to the present one are referred to as ''no action'' clauses, in an annotation in 37 A. L. R., p. 647, where the writer states that ''a provision that 'no action shall lie under this policy unless for loss actually sustained and paid in satisfaction of a final judgment,' '' or a similar provision, ''has been held in numerous cases to create *indemnity,* as distinguished from *liability,* insurance.'' And the writer (pp. 648–650), cites many cases decided in various States of the Union (including *Illinois Tunnel Co. v. General Acc. Fire & Life Ins. Co.,* 219 Ill. App. 251), in substantiation of his statement. In a supplemental annotation, contained in 83 A. L. R., pp. 688–693, under the heading ''Where the policy contains a 'no action' clause,'' the writer states (p. 689): ''By the *great weight of authority* it is held that a

policy containing such a clause is one of strict indemnity only,—the view, whether expressed or not, being that the insertion in the policy of such a clause removes all doubt or uncertainty, if any there be, regarding the kind of insurance meant to be granted by the insuring clause, usually susceptible to either of two different constructions.'' And the writer cites numerous adjudicated cases in support of the statement, among which are *United States Fidelity & Guaranty Co. v. Maryland Casualty Co.*, 182 Ill. App. 438, and *Kinnan v. Globe Indemnity Co.*, 233 Ill. App. 451 (*reversed* on another point in *Kinnan v. Hurst Co.*, 317 Ill. 251). In the *Illinois Tunnel Co.* case (219 Ill. App. 251) it is said (pp. 260, 261): ''Insurance contracts similar to the one involved here, being contracts of indemnity, have been repeatedly construed and treated as contracts under which the assured could have no claim against the insurance company unless and until it had paid and satisfied the judgment recovered by the claimant, although the insurance company had conducted the defense of the action brought by the claimant against the assured, in accordance with the terms of the policy'' (citing the *Maryland Casualty Co.* case, 182 Ill. App. 438, and numerous decisions in other jurisdictions). In the *Globe Indemnity Co.* case (233 Ill. App. 451) it appears that one Kinnan had obtained a decree on a creditor's bill adjudging that he recover from the Indemnity Co. the sum of $5,966.59 on its policy of insurance issued to the Hurst Company. The decree was reversed and the cause remanded with directions to dismiss the bill for want of equity. The policy contained a provision similar to the one in the present policy. In its opinion the Appellate Court, after referring to the holdings and decisions in said *Illinois Tunnel Co.* and *Maryland Casualty Co.* cases, *supra,* and citing other cases, concluded (p. 457) that ''operation must be given to the provision in the instant policy that the loss must be

*actually sustained and paid by the assured* before
any action on the policy will lie against the defend-
ant.'' On certiorari granted the case was reviewed
by our Supreme Court and the judgment of the Appel-
late Court was reversed and the decree of the trial
court affirmed (317 Ill. 251, 261), but on the ground,
as we read the opinion, that the insurance company
had *refused* to defend the original suit brought by
Kinnan against the Hurst Company (assured), and
thereby had *breached* its insurance contract. The
policy issued by the Indemnity Co. contained provi-
sions (somewhat similar to provision No. 6 in the pres-
ent policy as above set forth) that ''in the event that
suit is brought against the assured,'' the Indemnity
Co. will ''defend such suit even if groundless, in the
name and on behalf of the assured, unless and until
the Company shall elect to effect settlement thereof,''
and will ''pay all expense of the Company's investiga-
tion and adjustment of claim,'' etc. In paragraph 1
of the policy the Indemnity Co. agreed ''to indemnify
the assured (Hurst Co.) against loss from the lia-
bility imposed by law upon the assured for damages
on account of bodily injuries. . . . accidentally suf-
fered . . . during the policy period, . . . by any
employe or employes of the assured,'' etc. And in
another paragraph of the policy there was the follow-
ing provision (similar to provision No. 5 in the present
policy): ''No action for the indemnity against loss
provided for in insuring agreement 1 of this policy
shall lie against the Company, except for *reimburse-
ment* of the amount of loss *actually sustained and paid
in money by the assured* in full satisfaction of a *judg-
ment* duly recovered against the assured after trial
of the issue, nor unless brought within two years after
such judgment shall have been paid.'' In discussing
the two paragraphs of the policy our Supreme Court
said in its opinion (317 Ill. 255, italics ours) that the

agreement in paragraph 1, "together with the condi-
tion," as contained in said other paragraph, "*clearly
provides* only for the reimbursement of money *actually
paid* in satisfaction of a judgment recovered against
the assured after the trial of the issue in an action
for bodily injuries alleged to have been accidentally
suffered within the terms of the policy. (Citing cases.)
The Hurst Company, the assured in the policy, could
not maintain an action on this agreement until it had
sustained a loss for which a judgment had been recov-
ered and *which it had paid.* The plaintiff in error
(Kinnan) had no connection with the policy, which was
not issued for his benefit, and could under no circum-
stances maintain an action on it. . . . If, however,
the Hurst Company had a cause of action which it
could enforce against the defendant in error (Globe
Indemnity Co.), whether upon this policy or for some
other cause, the plaintiff in error had a right, *in equity,*
to compel the application of the proceeds of such cause
of action to the payment of his judgment against the
Hurst Company." (See, also, the subsequent Appel-
late Court decision in *Daugherty v. Alliance Casualty
Co.,* 271 Ill. App. 71, 80, 81.)

But counsel for plaintiff here contend in substance
that the conduct of the Insurance Co., in assuming
and carrying on the defense by its attorneys of the
original suit brought against Hinchcliff (the assured)
waived any benefit it had in the particular provision
of the policy. In support of the contention they cite
several cases in other jurisdictions, among them the
case of *Malley v. American Indemnity Corp.,* 297 Pa.
St. 216, wherein the court says (pp. 222, 223, italics
ours):

"Where the policy, indemnifying insured against
loss arising out of legal liability, provides that the
insured shall immediately notify the company in case
of injury, and the company will defend all suits grow-

ing out of injuries, in the name of insured, and insured will not settle any claim without consent of the company, it is usually held to be a policy of indemnity against liability for damages or an indemnity against liability, and is not a mere contract of indemnity against damages (citing authorities). Where the policy contains a clause requiring an *actual payment of money by the insured,* then, of course, *no liability attaches unless a monetary loss has actually been sustained, under the plain words of the contract.* (Citing authorities.) But, *even in the latter case,* an action against the company *has been allowed before payment,* where the company has actually come in and defended the suit. (Citing *Patterson v. Adan,* 119 Minn. 308, 313.) The principle is thus adequately expressed in the last named case: 'By undertaking the defense the company elected to treat plaintiff's cause of action, if any he had, as covered by the contract; and when it substituted itself and its judgment for that of defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured. The undertaking to defend is of no value, and may be of great danger, to the assured, where he thus abandons all control of the suit to the company, if it does not mean that whatever liability is established shall be discharged.' "

The holdings and decisions in these Pennsylvania and Minnesota cases are contrary to the weight of authority on the point, and also contrary to the holdings in a case in the Appellate Court of Illinois for this district (*Illinois Tunnel Co. v. General Acc. Fire & Life Ins. Co.,* 219 Ill. App. 251, 260, certiorari denied). In an annotation in 37 A. L. R., at p. 637, it is said: "By the weight of authority an accident indemnity insurer, which has under the right reserved to it in the policy assumed and carried on the defense of an action against the insured, does not thereby waive the benefit of the provision of its contract that no

action shall lie against it, except for loss *actually paid* in satisfaction of a final judgment (commonly called the 'no action clause'), so as to render it subject to the claims of the successful plaintiff in such action, *either by way of garnishment,* or in a direct proceeding on the policy." A large number of adjudicated cases are mentioned in the annotation in those jurisdictions where the majority rule is in force, and other cases are mentioned where in other jurisdictions the minority rule is in force. In a supplemental annotation in 81 A. L. R., at page 1383, it is said: "An indemnity insurer will not be estopped to set up the defense that the insured's loss was not covered by the contract of indemnity, by the fact that the insurer participated in the action against the insured, if, at the same time, it gives notice to the insured that it does not waive the benefit of such defense." In the present case it sufficiently appears that the Insurance Co., by the letter of September 16, 1931, and otherwise, gave such notice to Hinchcliff.

Considering the present policy, particularly the provision No. 5 therein, and the evidence, and the authorities above outlined, we are of the opinion that no recovery can be had against the garnishee (the Insurance Co.) in the present proceeding and for the reasons stated, and that the judgment of the circuit court of July 15, 1933, against said garnishee is erroneous in law and must be reversed. Other grounds for a reversal of the judgment, because of other conditions of the policy not having been complied with by Hinchcliff, are argued by counsel for the Insurance Co. They are substantially set forth in the garnishee's answer above outlined. But in view of our holdings and decision, based upon said provision No. 5 of the policy, we deem it unnecessary to consider them.

The judgment appealed from is reversed.

*Reversed.*

SULLIVAN, J., concurs.

SCANLAN, J. (specially concurring): The plaintiff, in the trial court and here, has taken the position that the defendant assumed charge of the defense to the original action, and we are, therefore, not called upon to decide what effect, if any, the defendant's letter of September 16, 1931, and the conversations following it had upon the contract of insurance. In other words, plaintiff's attitude makes it entirely unnecessary for us to decide whether or not said conduct of the defendant amounted to a breach of the insurance contract.